**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 2:14–cr–357–APG–VCF |
| vs. | **REPORT & RECOMMENDATION** |
| DANIELLE PERREIRA., *et al.*, | MOTION TO SUPPRESS (#96) |
| Defendants. | |

As Danielle Perreira approached a red light, an unmarked police car initiated its lights, pulled up behind her, and conducted a stop in the left-hand turn lane of Seven Hills Drive in Henderson, Nevada. A detective told her to exit the vehicle and stand in front of his car, as if she were under arrest. Another detective soon arrived and asked Ms. Perreira if she would like to speak to him about three armed robberies.

The trio pulled their vehicles into a nearby parking lot where Ms. Perreira was interrogated for thirty seven minutes in a closed police car. Although she was told that she was free to leave, she was not Mirandized and was told that the police were "positive" that she has evidence of the robberies. She was also told that her friend had been arrested after his home was searched and that the police have a search warrant for her car and are executing a search warrant at her home.

As the interrogation occurred, the other detective sat in his car, which Ms. Perreira could have seen in her peripheral vision. The detective was parked behind her car to prevent her from accessing it until the police had searched it. Approximately thirty minutes into the interview, Ms. Perreira became tearful, incriminated herself, and requested an attorney. She was subsequently indicted in connection with the robberies.

1

She now asserts that the detectives created a custodial setting that required *Miranda* warnings. The court agrees. In *United States v. Lee*, the Ninth Circuit held that an interrogation conducted under substantially similar circumstances created a custodial setting requiring *Miranda* warnings. 699 F.2d 466, 467–68 (9th Cir. 1982) (per curiam). Because no warnings were given here, the court recommends suppressing Ms. Perreira's incriminating statements.

## I. BACKGROUND

On June 6, 2014, the Henderson Police Department was investigating the armed robberies of three jewelry stores in Las Vegas, Nevada. (Mins. Proceedings #126). Detective Aguiar had just executed one search warrant in Las Vegas and Detective Luszczyk and Condratovich were preparing to execute a second in Henderson. (*Id.*) The search warrant was for Danielle Perreira's residence at 2900 Sunridge Heights Parkway and her 2011 white Nissan Versa. (*Id.*) Detective Luszczyk was surveilling the car and home in an unmarked police vehicle. (*Id.*)

At approximately 6:40 p.m., Detective Luszczyk saw a person enter the Versa and depart. (*Id.*) He reported the activity to Detective Condratovich, who told Detective Luszczyk to pursue the vehicle and stop it. (*Id.*) The Versa left Sunridge Heights Parkway and headed north on Seven Hills Drive. (*Id.*) Detective Luszczyk followed in an unmarked vehicle. (*Id.*)

As the Versa approached a red light, Detective Luszczyk activated his lights. (*Id.*) Both cars stopped in the left turn lane, which was less than mile from Ms. Perreira's home. (*Id.*) Detective Luszczyk parked behind the Versa, exited his vehicle, and knocked on the Versa's driver's side window. (*Id.*) He was wearing a tactical vest, which read "POLICE" across his chest, and was visibly armed. (*Id.*)

Concerned that a gun may be in the vehicle, he ordered Ms. Perreira to exit the car, stand in front of his vehicle and behind her vehicle. (*Id.*) Detective Luszczyk radioed Detective Condratovich and told him that he had stopped the Versa and detained Ms. Perreira. (*Id.*) Two minutes later, Detective

Condratovich arrived. (*Id.*)

Detective Condratovich was also visibly armed. (*Id.*) He told Ms. Perreira that the Henderson Police Department was investigating the armed robberies of three jewelry stores in Las Vegas and that he would like to ask her questions about the robberies. (*Id.*) When Ms. Perreira agreed to talk, Detective Condratovich suggested that they leave the roadway and pull into a nearby parking lot. (*Id.*) Ms. Perreira returned to the Versa, made four lefts, and parked in a space in a shopping plaza near a 7-11 convenience store. (*Id.*) Detective Condratovich and Luszczyk followed. (*Id.*)

Detective Luszczyk parked his car in the right lane of the parking lot's two-way roadway behind Ms. Perreira's car. (*Id.*) There was space between Ms. Perreira's car and Detective Luszczyk's car for Ms. Perreira to back up and for other cars to pass. (*Id.*) But, the location of Detective Luszczyk's car restricted travel through the parking lot to one lane and would have encumbered Ms. Perreira's departure—had she attempted to leave. (*Id.*)

Detective Condratovich parked his car five or six spaces away from Ms. Perreira's Versa and instructed her to sit in his passenger seat. (*Id.*) Meanwhile, Detective Luszczyk waited in his car, which Ms. Perreira could have seen in her peripheral vision. (*Id.*) She was then interrogated for thirty seven minutes in a closed police car. (*Id.*)

Detective Condratovich began the interrogation by telling Ms. Perreira that she is free to leave, "but" he "had" to ask her questions. (Trans. (#77-4) at 3:8–9). He then informed her that her home was being searched as they spoke, *see* (*id*. at 5:1–2), and that her friend's home had been searched earlier in the day and he had been subsequently arrested and "is in a lot of trouble right now." (*Id*. at 13:5–8; 29:22). Throughout, Detective Condratovich emphasized that the police have "conducted a full investigation," "know what happened," "know a lot of stuff," have "talked to everybody already," and know "everything"—"the whole plan." (*Id*. at 8:20–21; 14:5–6; 15:2; 28:6; 40:5–9).

3

He said that her phone will be searched and the police will use its data to discover where she had been on specific dates and times. (*Id*. at 31–32). He repeatedly told her to "be honest," *see, e.g.*, (*id*. at 8:18; 12:25; 14:8; 30:7; 33:25), and tell him what had happened. He brought up her prior arrests and said, with regard to the robberies, "there's a lot of evidence," "I'm pretty positive that you have some knowledge of [them]," and "you're pretty close to being in a lot of trouble from what we've gathered from talking to everybody. . . And that's why I need you to be honest." (*Id*. at 8:23–24; 24:5–14; 30:4–7).

At one point, Detective Condratovich stated, "It's not like I just came here to talk to you and say, hey, I'm just going to talk to this girl." (*Id*. at 28:11–12). Ms. Perreira subsequently "became tearful" and incriminated herself. (Gov't Opp'n #117 at 7:6–7). She stated, *inter alia*, "I feel like I was being forced into doing something that I didn't want to do and ultimately it ended up to this." (*Id*.) She also placed herself at the scene of the alleged robberies. *See generally* (Trans. (#77-4) at 28–40).

She now moves to suppress her incriminating statements, arguing that Detectives Luszczyk and Condratovich conducted a custodial interrogation in violation of *Miranda v. Arizona*. The court held an evidentiary hearing on October 13, 2015. This report and recommendation follows.

## II. LEGAL STANDARD

The Fifth Amendment provides, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. In *Miranda v. Arizona*, the Supreme Court held that the Fifth Amendment requires law enforcement officials to advise a suspect of his right to remain silent and right to an attorney if the suspect is subjected to a custodial interrogation. 384 U.S. at 444. If law enforcement officials do not Mirandize a suspect during a custodial interrogation, the suspect's statements must be suppressed from the prosecutor's case in chief. *Id*.; *see also Harris v. New York*, 401 U.S. 222 (1971) (holding that confessions obtained in violation of *Miranda* may be used for impeachment purposes).

4

*Miranda* warnings are designed to neutralize interrogation practices that prevent a suspect from making "a free and rational choice" about speaking. *Missouri v. Seibert*, 542 U.S. 600, 608 (2004) (citing *Miranda*, 384 U.S. at 464–65). They achieve this goal by requiring the police to "adequately and effectively" advise suspects of the choices the Constitution guarantees. *Seibert*, 542 U.S. at 608 (citing *Miranda*, 384 U.S. at 467). "It is the premise of *Miranda* that the danger of coercion results from the interaction of custody and official interrogation." *Illinois v. Perkins*, 496 U.S. 292 (1990). The concern is "psychologically rather than physically oriented" because the "the modern practice of in-custody interrogation" involves the application of mental coercion. *Miranda*, 384 U.S. at 448.

In cases like this, where the suspect was not formally arrested or taken into police custody, the suspect is nevertheless considered "in custody" for *Miranda* purposes if he has been "deprived of his freedom of action in any significant way." 384 U.S. at 444. Since *Miranda*, the Supreme Court has enunciated several general definitions of custody, but the ultimate inquiry is whether there was "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (quotation marks and citations omitted); *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam) (same). As stated by Judge Friendly, for a suspect to be in custody "in the absence of actual arrest something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so." *United States v. Hall*, 421 F.2d 540, 545 (2d Cir. 1969).

The court engages in a three-step inquiry to determine whether a suspect was in custody. *J.D.B. v. N. Carolina*, 131 S. Ct. 2394, 2402 (2011) (citing *Keohane*, 516 U.S. at 112). First, the court examines the totality of circumstances surrounding the interrogation. *J.D.B.*, 131 S. Ct. at 2402; *United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008). Second, the court considers whether a reasonable person

in those circumstances would "have felt he or she was not at liberty to terminate the interrogation and leave." *Craighead*, 539 F.3d at 1082 (citing *Keohane*, 516 U.S. at 112). Third, "[o]nce the scene is set and the players' lines and actions are reconstructed," the court determines whether there was a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." *J.D.B.*, 131 S. Ct. at 2402 (citing *Keohane*, 516 U.S. at 112). The inquiry focuses on the objective circumstances; the subjective beliefs held by the interrogating officers and the person being interrogated are not germane. *Stansbury*, 511 U.S. at 322.

Courts in the Ninth Circuit consider five factors when making this determination: (1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual. *United States v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002) (citing *United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001)).

### III. DISCUSSION

Ms. Perreira's motion presents one question: whether she was interrogated in a custodial setting that required *Miranda* warnings under the Fifth Amendment? The court finds that Detectives Luszczyk and Condratovich created a custodial setting for *Miranda* purposes.

In *United States v. Lee*, the Ninth Circuit held that a suspect was in custody for *Miranda* purposes when two FBI agents interrogated the suspect in a closed car for over an hour while the police searched his home. 699 F.2d at 468.[1] The District of Arizona reached the same conclusion in *United States v. Salabye*, 623 F. Supp. 2d 1010, 1013 (D. Ariz. 2009). There, an armed FBI agent interrogated a suspect "in the closed confines of [a] truck" for two hours while other armed agents searched the suspect's home.

---

[1] Although *Lee* is an older opinion, it was recently cited with approval in *Craighead*. 539 F.3d at 1088.

*Id*. The circumstances of Ms. Perreira's interrogation parallel *Lee* and *Salabye*. Like both *Lee* and *Salabye*, Ms. Perreira was interrogated in a closed police vehicle by a visibly armed detective while the Henderson Police Department executed a search warrant on her home. *See* (Mins. Proceedings #126). Ms. Perreria's interrogation was shorter than the interrogations in *Lee* and *Salabye*. It ended when Ms. Perreira invoked her right to counsel.

The government contends that *Lee* is distinguishable because Mr. Lee asserted is innocence before being confronted with evidence of his guilt for fifteen minutes. (Doc. #117 at 14:12–15). This is distinction inconsequential. Although Ms. Perreira did not assert her innocence like Mr. Lee, she was reticent and provided partial or incomplete details. Her refusal to be forthright prompted Detective Condratovich to repeatedly command her "to be honest." *See, e.g.*, (Trans. (#77-4) at 8:23–24; 24:5–14; 30:4–7). When this failed, he explained to her how the police will search her phone and discover where she had been on specific dates and times. He also insisted that he already knows "everything," has talked to "everybody," and is "positive that you have some knowledge" of the robberies.

These statements are not the same as being confronted with direct evidence of one's guilt—but the effect is the same. A reasonable person is not likely to feel free to leave an interrogation if a police officer commands the person to "be honest" because the officer is "positive" that the person has knowledge of a crime. The clear imputation is that the suspect is lying to a police officer and obstructing an investigation, which is a criminal act. *See* NEV. REV. STAT. § 197.190 (West). Therefore, the court finds that Ms. Perreria's interrogation was materially similarly to the unlawful interrogation in *United States v. Lee*.

This conclusion is bolstered by the Ninth Circuit's subsequent decision in *Kim*. There, the court instructed lower courts to consider five factors when determining if a suspect was in custody for *Miranda* purposes. As discussed below, four of the five factors strongly weigh in favor of a finding that Ms. Perreria was in custody.

The first factor considers "the language used to summon the individual." 292 F.3d at 974. The government contends that this factor weighs in its favor because Detective Condratovich summoned Ms. Perreira on consensual and voluntary terms by asking her if she would like to speak with him in the parking lot. The court disagrees. Language must be considered "within the context of the scene as a whole." *Craighead*, 539 F.3d 1073, 1088 (citing *Lee*, 699 F.2d at 468). When Detective Condratovich asked Ms. Perreira whether she would like to speak with him in the parking lot, she had already been stopped on a public roadway by an armed detective, detained at the hood of a police vehicle, and told that she must wait for Detective Condratovich to arrive. *See* (Mins. Proceedings #126). Detective Condratovich's use of consensual and voluntary language is insufficient to neutralize the force employed by Detective Luszczyk. The court, therefore, finds that this factor weighs heavily in Ms. Perreira's favor.

The second *Kim* factor considers "the extent to which the defendant is confronted with evidence of guilt." 292 F.3d at 974. This factor also weighs heavily in Ms. Perreira's favor. Detective Condratovich repeatedly told Ms. Perreira that the police know "everything" and will discover where she had been on specific dates and times when they search and seize her phone. Detective Condratovich also asked Ms. Perreira about her prior arrests and told her that her friend's home had been searched, the friend had been arrested, and that the police are "positive" that she has incriminating evidence and is "pretty close to being in a lot of trouble from what we've gathered from talking to everybody."

Repeated imputations of guilt, like these, weigh in favor of a finding of custody. *United States v. Carroll*, — F. Supp. 3d —, 2015 WL 1927531, at *4 (N.D. Cal. Apr. 28, 2015) (citing *United States v. Bassignani*, 575 F.3d 879, 880 (9th Cir. 2009); *United States v. Toliver*, 480 F. Supp. 2d 1216, 1219 (D. Nev. 2007) (Pro, J.)). Indeed, it is the premise of *Miranda* that a serious danger of coercion arises when a suspect is interrogated in an adversarial manner. *See Illinois v. Perkins*, 496 U.S. 292, 296 (1990). The government argues that Detective Condratovich "tried to encourage [Ms. Perreira] to be more truthful by

incrementally revealing pieces of evidence" known to the police. (Doc. #117 at 15:4–5). Detective Condratovich's intentions are irrelevant as a matter of law. *Stansbury*, 511 U.S. at 322.

The third *Kim* factor considers "the physical surroundings of the interrogation." 292 F.3d at 974. This factor also favors Ms. Perreira because she was isolated in a closed police vehicle. As previously stated, both the Ninth Circuit and District of Arizona have held that an interrogation in a closed police vehicle is custodial. *See Lee*, 699 F.2d at 468; *Salabye*, 623 F. Supp. 2d at 1013. In *Miranda*, Chief Justice Warren stated the danger is coercion is heightened when the interrogator is "alone with the person under interrogation." 384 U.S. at 499.

Nonetheless, the government asserts that this factor weighs in its favor because "[i]t was light outside, the windows were not obscured and the surrounding environment was a public parking lot near the defendant's residence[, and] the presence of law enforcement was minimal." (Doc. #117 at 15:17–20). The presence of law enforcement was not "minimal." Before being interrogated, Ms. Perreira had been removed from her car and detained on the hood of a police vehicle. While being interrogated, she was removed from her car and alone with one detective while a second detective looked on from a parked car that would have encumbered Ms. Perreira's departure—had she attempted to leave.

The fourth *Kim* factor considers "the duration of the detention." 292 F.3d at 974. This factor is neutral. Ms. Perreira's interrogation only lasted thirty seven minutes.[2] However, the interrogation ended when Ms. Perreira invoked her right to counsel.

---

[2] A thirty seven minute interrogation generally indicates a noncustodial setting. *See United States v. Glover*, 104 F.3d 1570, 1579 (10th Cir. 1997) (find that a twenty minute interrogation was not custodial); *United States v. Hudgens*, 798 F.2d 1234, 1237 (9th Cir. 1986) (find that a forty five minute interrogation was not custodial); *California v. Beheler*, 463 U.S. 1121, 1124 (1983) (per curiam) (finding that a thirty minute interrogation was not custodial); *but see United States v. Beraun-Panez*, 812 F.2d 578, 580 (9th Cir.) modified, 830 F.2d 127 (9th Cir. 1987) (finding that a thirty minute interrogation was custodial).

9

The final *Kim* factor examines "the degree of pressure applied to detain the individual." 292 F.3d at 974. This factor heavily favors Ms. Perreira. Detective Luszczyk was surveilling Ms. Perreira's home and car. When she departed, Detective Luszczyk was ordered to follow her and stop her. He pulled her over, removed her from her car, and detained her at the front of his police vehicle and told her to wait for Detective Condratovich—as if she were under arrest. Through the interrogation, Detective Luszczyk watched from his police vehicle, which was positioned directly behind Ms. Perreira's Versa—as if to prevent her departure.

As stated by Judge Friendly, physical restrain is not a necessary predicate for a finding that a suspect is in custody for *Miranda* purposes. *See Hall*, 421 F.2d at 545. The police must merely do something that "indicates that they would not have heeded a request to depart or to allow the suspect to do so." *Id*. Such indications were present here. From the beginning of the stop through the end of the interrogation, the detectives either told Ms. Perreira to stand at the front of a police vehicle or guarded her car from freely departing. The court finds that these retrains were custodial and *Miranda* warnings were required.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Danielle Perreira's Motion to Suppress (#96) be GRANTED.

IT IS SO RECOMMENDED.

DATED this 16th day of October, 2015.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE