UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANIELLE PERREIRA, *et al.*,<br><br>Defendants. | Case No. 2:14-cr-00357-APG-VCF<br><br>**ORDER REJECTING REPORT & RECOMMENDATION AND DENYING PERREIRA'S MOTION TO SUPRESS**<br><br>(Dkt. ##96, 131) |

Magistrate Judge Ferenbach issued a Report & Recommendation ("R&R") (Dkt. #131) recommending that I grant defendant Danielle Perreira's motion to suppress statements she made to police (Dkt. #96). The Government filed an objection (Dkt. #156) to the R&R and Perreira filed a response (Dkt. #181). I have conducted a *de novo* review of the R&R and all related papers as required by Local Rule 3-2. I conclude that Perreira was not "in custody" at the time of her interrogation and therefore *Miranda* warnings were not required. Thus, I decline Judge Ferenbach's recommendation and deny Perreira's motion to suppress the statements.

I.  BACKGROUND

On June 6, 2014, the Henderson Police Department was investigating the armed robberies of several jewelry stores. (Dkt. #156-1 at 58 (transcript of evidentiary hearing).) Detectives Adam Luszczyk and Michael Condratovich were preparing to execute search warrants for Perreira's residence and vehicle. (*Id.*) Detective Luszczyk was surveilling Perreira's car and home in an unmarked police car. (*Id.* at 6.) During the surveillance, Perreira got into her car and drove away. (*Id.* at 7.) Detective Luszczyk was told that because there was a search warrant for the car, if someone left in it he was to follow the car and pull it over, which he did. (*Id.* at 6-7.)

Both cars stopped in the left-hand turn lane of a busy intersection. (*Id.* at 8.) Detective Luszczyk parked behind Perreira, exited his car, and knocked on her driver's side window. (*Id.*)

He was in plain clothes but was wearing a tactical vest that read "POLICE" across his chest and his weapon was visible. (*Id.* at 8-9.) Detective Luszczyk ordered Perreira to exit the car and stand in front of his vehicle and behind her vehicle. (*Id.* at 12-13.) This was done both to keep an eye on Perreira while waiting for Detective Condratovich to arrive and as a precaution in case any weapons were in her vehicle. (*Id.* at 12.)

Two minutes later, Detective Condratovich arrived in an unmarked police car. (*Id.* at 13, 60.) He was dressed in plain clothes but had his service weapon with him. (*Id.* at 60.) Detective Condratovich told Perreira that she was being stopped because he needed to ask her some questions about an investigation he was working on. (*Id.* at 61.) When Perreira agreed to talk, Detective Condratovich suggested they leave the roadway and pull into a nearby parking lot. (*Id.* at 62.) Detective Luszczyk parked his car in the right lane of the parking lot's two-way roadway behind Perreira's car. (*Id.* at 19.) Detective Condratovich parked his car a few spaces away from Perreira. (*Id.*) He asked Perreira if she would be willing to sit in his car and answer questions. (*Id.* at 67.) Meanwhile, Detective Luszczyk waited in his car. (*Id.*) Detective Condratovich then interrogated Perreira for a little over 30 minutes in his police car. (*Id.* at 68.) At no point did either detective un-holster his weapon nor was Perreira ever handcuffed. (*Id.* at 9, 11, 65-66). Perreira's demeanor was calm and casual throughout the interrogation. (*Id.* at 62-63.)

Detective Condratovich began the interrogation by telling Perreira that she was not under arrest but that he needed to ask her questions about his investigation. (Dkt. #77-4 at 3 (transcript of interrogation recording).) He informed her that a search warrant was being executed on her apartment. (*Id.* at 5.) He stated that her name had come up as being a friend of another individual related to the investigation and that the police needed to speak to everyone involved. (*Id.* at 5-6.) Detective Condratovich told Perreira, "like I said, if you don't want to talk to me, you don't have to. You're free to, you know, to leave it you want." (*Id.* at 6.) He stated that he wanted to make sure she understood that, to which she replied "okay." (*Id.*)

Throughout the interrogation, Detective Condratovich told Perreira that the police had conducted a full investigation, knew what happened, and had already talked to everybody. (*See*

2

*e.g., id.* at 8, 14, 15, 28.) When Perreira seemed hesitant to give information, Detective Condratovich told her to be as honest as possible and tell him what had happened. (*See, e.g., id.* at 8.) At one point he told her that "I'm pretty positive that you have some knowledge," and that "you're pretty close to being in a lot of trouble from what we've gathered from talking to everybody . . . and that's why I need you to be honest." (*Id.* at 8, 24.) Perreira asked if she was going to be arrested and Detective Condratovich told her again that she was not under arrest but that he needed to get her side of the story to compare it to what others had already told him. (*Id.* at 40.)

Near the end of the interrogation, Perreira became emotional and seemed to incriminate herself. She stated several times, referring to the robberies, that she felt "like I was being forced into doing something that I didn't want to do." (*Id.* at 41-43.) She also asked if she was going to have to be a witness and testify, stating that she was afraid of what would happen if she did. (*Id.* at 43.) Perreira then told Detective Condratovich that she would be more comfortable if she was able to speak to an attorney. (*Id.* at 44-45.) Detective Condratovich again told Perreira that she was not under arrest and ended the interrogation. (*Id.* at 45.)

Perreira contends the circumstances of her interrogation created a custodial setting such that she did not feel she was free to leave. Thus, she argues, she was constitutionally entitled to receive warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). She contends that because she was never given *Miranda* warnings, her statements must be suppressed.

After holding an evidentiary hearing, Judge Ferenbach agreed that the interrogation was custodial and recommended that I grant Perreira's motion to suppress. (Dkt. #131.) In his R&R, Judge Ferenbach went through the factors outlined in *United States v. Kim* (292 F.3d 969, 973 (9th Cir. 2002)), and found they weighed in favor of finding the interrogation to be custodial. The Government objects to Judge Ferenbach's recommendation of suppression, arguing that numerous facts show that the interrogation was not custodial. (Dkt. #156.) Thus, the Government argues, *Miranda* warnings were not required.

////

## II. ANALYSIS

When an objection is made to a magistrate judge's report and recommendation, the district court must "make a *de novo* determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C); *see also United States v. Raddatz*, 447 U.S. 667, 676 (1980); *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir.1989); Local Rule 3-2.

Here, the question is whether Perreira was "in custody" during her interrogation such that *Miranda* warnings were required. The Fifth Amendment requires law enforcement officials to advise suspects of their right to remain silent and their right to an attorney if they are subjected to a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436 (1966). If law enforcement officials do not give a suspect *Miranda* warnings during a custodial interrogation, the suspect's statements must be suppressed. *Id*. While "any police interview of an individual suspected of a crime has coercive aspects to it . . . [o]nly those interrogations that occur while a suspect is in police custody . . . heighten the risk that statements obtained are not the product of the suspect's free choice." *J.D.B. v. N. Carolina*, 131 S. Ct. 2394, 2401 (U.S. 2011). A custodial interrogation does not require that the person be formally arrested or taken into police custody, but instead can also arise when "questioning initiated by law enforcement officers . . . deprived [the suspect] of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444.

In evaluating whether an interrogation was custodial where the suspect was not formally taken into custody, I must determine whether there was a "restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (internal quotation omitted). Put another way, I must determine whether "the officers established a setting from which a reasonable person would believe that he or she was not free to leave." *Kim*, 292 F.3d at 973 (citing *United States v. Beraun-Panez*, 812 F.2d 578, 580 (9th Cir. 1987) *modified by* 830 F.2d 127 (9th Cir. 1987)). In making this determination I must examine all of the circumstances surrounding the interrogation. *Id*. "The inquiry focuses on the objective

4

circumstances of the interrogation, not the subjective views of the officers or the individual being questioned." *Id.*

The Ninth Circuit has found the following factors to be among those likely to be relevant to deciding whether an interrogation was custodial: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *Id.* at 974 (internal citations and quotations omitted). However, "[o]ther factors may also be pertinent to, and even dispositive of, the ultimate determination whether a reasonable person would have believed he could freely walk away from the interrogators." *Id.* For example, in *United States v. Craighead*, the Ninth Circuit found the following factors relevant to determining whether the interrogation in that case was custodial: "(1) the number of law enforcement personnel and whether they were armed; (2) whether the suspect was at any point restrained, either by physical force or by threats; (3) whether the suspect was isolated from others; and (4) whether the suspect was informed that he was free to leave or terminate the interview, and the context in which any such statements were made." 539 F.3d 1073, 1084 (9th Cir. 2008).

Based on all of the objective circumstances surrounding Perreira's interrogation, Perreira's freedom of movement was not restrained "to the degree associated with a formal arrest." *Stansbury*, 511 U.S. at 322. Nor would a reasonable person in Perreira's position have believed that she was not free to leave. *See Kim*, 292 F.3d at 973. Perreira was stopped on a public roadway by Detective Luszczyk because a search warrant had been issued for her car. (Dkt. #156-1 at 6.) Minutes after Perreira was stopped, Detective Condratovich arrived and asked her if she would be willing to answer questions related to an ongoing investigation. (*Id.* at 60-61.) Perreira agreed and pulled into a nearby parking lot in order to move out of the roadway. (*Id.* at 62-63.) During the interrogation, Perreira was told more than once that she was not under arrest. (*See, e.g., id.* at 74.) Detective Condratovich also told her that she did not have to speak to him if she did not want to and that she was free to leave. (Dkt. #77-4 at 6.) Perreira was never

physically restrained, she was never threatened with arrest, the detectives never took out their handcuffs, and they did not un-holster their weapons. (Dkt. #156-1 at 9, 11, 65-66.) Perreira never asked either detective if she could leave nor did she give any indication that she was not willing to voluntarily answer questions. The interrogation lasted a little over 30 minutes and occurred in a public parking lot less than a mile from Perreira's home. (*Id.* at 7, 27.)

When Perreira became hesitant to answer Detective Condratovich's questions, he told her to be honest and told her that he had already spoken to others involved, but he did not raise his voice or threaten Perreira if she did not answer his questions. Throughout the interrogation, both Detective Condratovich and Perreira spoke in calm, conversational tones. While it is true that "any police interview of an individual suspected of a crime has coercive aspects to it," that does not mean that all interrogations are custodial such that *Miranda* warnings are required. *J.D.B.*, 131 S. Ct. at 2401. Rather, "[o]nly those interrogations that occur while a suspect is in police custody . . . heighten the risk that statements obtained are not the product of the suspect's free choice." *Id.* Although most people would likely feel some amount of internal pressure to answer questions from police officers—and to tell the truth when questioned—that does not make every interrogation custodial. After reviewing the papers, reading the transcripts of the hearing and the interrogation, and listening to the taped interrogation of Perreira, I find that the circumstances of this interrogation would not have made a reasonable person in Perreira's position believe that she could not leave or that she was compelled to answer the detective's questions. Therefore, I deny Perreira's motion to suppress her statements.

### III. CONCLUSION

IT IS ORDERED that Magistrate Judge Ferenbach's Report & Recommendation **(Dkt. #131) is rejected**. Perreira's motions to suppress **(Dkt. #96) is denied**.

Dated: February 3, 2016.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE