1                 UNITED STATES DISTRICT COURT

2                    DISTRICT OF NEVADA

3

4  UNITED STATES OF AMERICA,     )  Case No. 2:14-cr-357-APG-VCF
                          )
5              Plaintiff,   )  Las Vegas, Nevada
                          )  Wednesday, March 30, 2016
6          vs.            )  Courtroom 6C, 9:28 a.m.
                          )
7  BRIAN WRIGHT and         )  CALENDAR CALL
  DANIELLE PERREIRA,       )
8                          )  Page 13, Line 22 through Page
             Defendants.  )  26, Line 23 bound separately
9                         )  C E R T I F I E D  C O P Y

10

11            REPORTER'S TRANSCRIPT OF PROCEEDINGS

12

    BEFORE:        THE HONORABLE ANDREW P. GORDON,
13                UNITED STATES DISTRICT JUDGE

14

15

16

17

18  APPEARANCES:

19  See next page

20  COURT REPORTER:

21          Heather K. Newman, RPR, CRR, CCR #774
           United States District Court
22          333 Las Vegas Boulevard South, Room 1334
           Las Vegas, Nevada  89101
23          (702) 464-5828

24

25  Proceedings reported by machine shorthand, transcript produced
  by computer-aided transcription.

1    APPEARANCES:

2    For the Plaintiff:

3            UNITED STATES ATTORNEY'S OFFICE
             BY:  KIMBERLY M. FRAYN
4                 J. GREGORY DAMM
             333 Las Vegas Boulevard South, Suite 5000
5            Las Vegas, Nevada 89101
             (702) 388-6336
6
     For the Defendant Brian Wright:
7
             BRIAN WRIGHT
8            PRO SE
             Nevada Southern Detention Center
9            2190 East Mesquite Avenue
             Pahrump, NV  89060
10
             BELLON & MANINGO, LTD.
11           BY:  LANCE A. MANINGO
             732 South Sixth Street, Suite 201
12           Las Vegas, NV  89101
             (702) 452-6299
13
     For the Defendant Danielle Perreira:
14
             LEVENTHAL AND ASSOCIATES
15           BY:  TODD M. LEVENTHAL
             626 South Third Street
16           Las Vegas, NV  89101
             (702) 472-8686
17
     Also present:
18
             Michael Stein
19

20

21

22

23

24

25

1            LAS VEGAS, NEVADA; WEDNESDAY, MARCH 30, 2016; 9:28 A.M.

2                           --oOo--

3                    P R O C E E D I N G S

4

5            COURTROOM ADMINISTRATOR:  United States vs. Brian

6    Wright and Danielle Perreira, 2:14-cr-357-APG-VCF.

7            Counsel, please note your appearances.

8            MR. DAMM:  Good morning, Your Honor.  Kimberly Frayn

9    and Gregory Damm on behalf of the United States.

10           THE COURT:  Good morning to both of you.

11           MR. MANINGO:  Good morning, Your Honor.

12   Lance Maningo, standby counsel to Brian Wright who is also

13   present.

14           THE COURT:  Good morning.

15           Good morning, Mr. Wright.

16           PRO SE WRIGHT:  Good morning, Your Honor.

17           MR. LEVENTHAL:  Good morning, Your Honor.

18   Todd Leventhal on behalf of Ms. Perreira.  She's present out of

19   custody.

20           THE COURT:  Good morning to both of you.

21           This is the time set for Calendar Call.  We have the

22   trial scheduled to begin on Monday at 9:00 a.m.  There are some

23   pending Motions in Limine that I want to address and talk also

24   about trial procedure.

25           My understanding is Mr. Stein, Michael Stein, is here

1   in court.  He's an attorney that apparently I believe

2   represents one of the victims or some of the witnesses.  Is

3   that right, Mr. Stein?

4          Come on up.  Good to see you again.

5          MR. STEIN:  Good morning, Your Honor.  Michael Stein,

6   Bar Number 4760.  That's Nevada state bar.

7          Yes, Your Honor, I do, I represent the jewelry store

8   Jared as well as our firm is arranging to represent some of the

9   witnesses and at some point in time I wanted, if the Court has

10  time to hear, our concern about some of the hardships that are

11  going to be placed on all of these witnesses that have been

12  subpoenaed for the -- to appear at, I believe, 9:00 a.m. on the

13  4th.  I'm going to have an entire store of witnesses not be

14  able to work if they all have to show up at the same time just

15  to hear jury selection and the voir dire and openings.

16         THE COURT:  They won't be and that's obviously one of

17  the issues I do want to discuss today is scheduling of the

18  witnesses, when they need to show up and all that kind of

19  stuff.

20         MR. STEIN:  Yeah.

21         THE COURT:  So I appreciate that and if, for some

22  reason, it slips my mind, don't let me forget, Mr. Stein.

23         MR. STEIN:  Okay.

24         THE COURT:  We'll address that issue today.

25         Mr. Damm.

1           MR. DAMM:  Your Honor, before we get too far into

2    these proceedings --

3           THE COURT:  Yes.

4           MR. DAMM:  -- I'd like to advise the Court of some

5    difficulties that we're having in the U.S. Attorney's Office --

6           THE COURT:  I know you're moving.

7           MR. DAMM:  -- which will necessitate our request for

8    a continuance.

9           As you probably know, there's a new building just to

10   the south of this courthouse, that's been under construction

11   for I believe about four years.  During that time period we've

12   had numerous proposed dates for --

13          THE COURT:  I'm well familiar with of all that.  If

14   you need to make a record though, I understand that, but go

15   ahead.

16          MR. DAMM:  -- our move into that building and as a

17   result of that I suppose we -- we became somewhat jaded

18   whenever we heard that there was a new proposed date.  Well, as

19   it turns out, it looks like that day for moving has finally

20   arrived and we're actually scheduled to begin the physical move

21   on Friday, this Friday, with the Civil Division, which occupies

22   half of the Fourth Floor of this building, and then the

23   Criminal Division is scheduled to move on Saturday and Sunday

24   and we occupy the Fifth Floor of this building, all of which

25   leads me to the point that this is an extremely disruptive

1    process for our office and for us individually.  We have

2    probably somewhere in the neighborhood of 100 employees that

3    will be physically moving as well as all of the accumulated

4    furniture and files that have accumulated over the last 15

5    years.  And perhaps most significantly for us as trial

6    attorneys is that -- that our entire computer system is

7    scheduled to be offline beginning some time Thursday afternoon

8    and is not expected to be up and running again until, at the

9    very earliest, Monday and that . . . that could be potentially

10   problematic, which leaves us with . . . very few options for

11   being able to work between now and next week in terms of a

12   location and in terms of physical support with respect to our

13   computer system, even our offices, and perhaps more importantly

14   our support staff, our victim witness coordinators, our legal

15   assistants.  All of that has been disrupted as a result of this

16   move.  So . . . this is all preparatory to my request for a

17   continuance based upon this unusual circumstance.

18          I -- I think we were perhaps overly optimistic in

19   thinking that we could work around the move and still proceed

20   with a trial on the 4th, but it's becoming increasingly clear

21   to me that that is going to put a tremendous strain on not only

22   the trial attorneys, but the other support staff as well.

23          THE COURT:  How long of a continuance are you

24   seeking?

25          MR. DAMM:  Your Honor, I would ask three weeks,

1    beginning -- that we would be available on the week of the 25th

2    of April or the 2nd of May.

3              THE COURT:  I can understand a short continuance, but

4    I'm -- I'm struggling to understand a three-week continuance.

5    If you're going to be down for three or four days, Thursday,

6    Friday, Saturday, Sunday, I'm not sure how that equates to a

7    three-week continuance.

8              MR. DAMM:  Well, Your Honor . . . I've been

9    involved in -- in two other moves in the U.S. Attorney's Office

10   in the last 27 years and I know, as I've just indicated, the

11   delays that have been occasioned in the construction of this

12   new building.  I think it was -- it's probably at least two

13   years beyond when it was originally scheduled to be completed.

14   I don't have any great degree of confidence that our computer

15   systems and our office space and all of the other necessary

16   support mechanism, phones, copy machines -- we're already --

17   copy machines have disappeared from our office space, printers

18   have disappeared.  I'm just not sure that -- that we -- we can

19   get -- make that transition and be ready in four or five days.

20             And I -- I -- I picked those dates also with some

21   consultation with defense counsel, too, who have other

22   conflicts as well.  So I'm not -- I'm not just trying to

23   accommodate our schedules, but I'm trying to be conscious of

24   their schedules as well, Your Honor.

25             THE COURT:  Okay.

1          Mr. Wright, you've heard the government's request.  I

2     presume you're going to oppose that.

3          PRO SE WRIGHT:  Absolutely, Your Honor.  I mean, just

4     as you said, I mean, three, four days shouldn't constitute a

5     three-week continuance, Your Honor.  I'm definitely against it.

6          THE COURT:  Okay.

7          PRO SE WRIGHT:  It's been going on long enough and I

8     just don't see, you know, what's the problem here.  I mean, I

9     don't think that will stop them coming in here and presenting

10     they case, so I oppose.

11          THE COURT:  Okay.  Mr. Maningo, anything to add?

12     Although you're standby counsel, I certainly would listen to

13     anything you have to say.

14          MR. MANINGO:  I appreciate the opportunity to have a

15     voice in this.  I don't object to the continuance.  What the

16     Court wants to do and the reason for the government seem

17     appropriate.  Scheduling is my only -- only issue.

18          THE COURT:  Okay.

19          MR. MANINGO:  I think you'll recall, Your Honor, last

20     time we tried to reset trials, we had to coordinate with

21     Judge Mahan's department and Judge Mahan had to coordinate I

22     think with your department on trials.  I just -- if the Court's

23     considering a three-week continuance, I would just let the

24     Court know that I am set in front of Judge Mahan on the

25     Dominque Wells trial for April 18th and assistant U.S. attorney

1    Phillip Smith and I agreed to . . . squeeze that trial in

2    knowing that I also started a state court case with

3    multi-defendants.  It's, for me, the Brandon Starr case, and

4    that is set to start on April 25th.  But I have an agreement

5    by -- with the Court and other counsel that they would possibly

6    give me a Tuesday, Wednesday start if we carried over in the

7    federal trial.

8            So, I have conflicts from April 18th through the end

9    of April that will make it really difficult for me to set this

10   trial on those dates.

11           THE COURT:  When do you free up after the Starr trial

12   then?

13           MR. MANINGO:  That one right now is set to go three

14   weeks.  I would say I would then next be available -- and I

15   don't mean to suggest that my court -- my calendar is more

16   important than anyone else's --

17           THE COURT:  I understand.

18           MR. MANINGO:  -- Your Honor, but, the end of . . .

19   it's hard to say, Your Honor.  There are so many trials set,

20   but we all know that some of them go away and some of them

21   don't.  I would say the next day I'm absolutely clear would be

22   June 13th.

23           THE COURT:  Okay.  Don't worry, we're not going that

24   far out.

25           MR. MANINGO:  Thank you, Your Honor.

1          THE COURT:  You're welcome.

2          Mr. Leventhal.

3          MR. LEVENTHAL:  I don't oppose -- first of all, I do

4   not oppose this.  I understand what the government's going

5   through.

6          THE COURT:  You need to be on a --

7          MR. LEVENTHAL:  Sorry.  I do not oppose --

8          THE COURT:  Thank you.

9          MR. LEVENTHAL:  -- a continuance.  I understand what

10  the government is going through.  However, on the 25th, I'm

11  looking to be in Memphis, Tennessee on another matter.  It's

12  United States vs. Levine.  That's -- we're going to be flying

13  back with the Department of Justice to Memphis to take a

14  witness' deposition.  That will be three days.  And then on the

15  20th I have a scheduled holiday with my kids that call me Todd.

16  I haven't seen them in a while.  So . . .

17          THE COURT:  April 20th or May 20th you're talking?

18          MR. LEVENTHAL:  That would be April.  So, after that,

19  the week after that I'm pretty good and the week after that I'm

20  pretty good and then I haven't checked anything.  If the Court

21  asked me to check what other -- what other -- what you're

22  looking at, beyond that . . .

23          THE COURT:  So the week of May 2nd you're available

24  then you're saying?

25          MR. LEVENTHAL:  I am available.  I -- I -- there's

HEATHER K. NEWMAN, FOCR, RPR, CCR 774    (702)464-5828

1   things obviously that I have that I can move around.  There's

2   nothing pressing where I can't be here.  So that that would be

3   May 2nd, that week, I could . . .  The 9th I do start another

4   trial that I believe is going to go, but again, you never know,

5   so . . .

6            THE COURT:  Okay.  Let's talk about how much time we

7   need for this trial.

8            Mr. Damm, Ms. Frayn, how much time do you anticipate

9   needing?

10           (Brief pause in proceedings.)

11           MR. DAMM:  Your Honor, we anticipate seven days for

12  the government's case.

13           THE COURT:  Seven trial days?

14           MR. DAMM:  Yes, that's correct, Your Honor.

15           THE COURT:  Tell me why.

16           MR. DAMM:  Your Honor, we're basing that on the

17  number of witnesses that we intend to call and the expected

18  cross-examination from the -- of the two defendants,

19  Your Honor.

20           THE COURT:  How many witnesses do you anticipate

21  having?

22           MR. DAMM:  We expect somewhere in the neighborhood of

23  20 witnesses, Your Honor.

24           Your Honor, upon consultation with co-counsel, we

25  think seven days is probably . . . more than we actually need.

1    I -- I -- I would think that we -- that five days would be

2    sufficient for our case, Your Honor.

3              THE COURT:  My recollection is last time we were here

4    you told me it was going to be a five-day trial for the

5    government.

6              MR. DAMM:  And I think that's -- that's more

7    realistic, Your Honor.

8              THE COURT:  Okay.  And is it still the government's

9    position that they will not attempt or offer any evidence or

10   witnesses to say that Mr. Wright was in the jewelry stores that

11   were robbed?

12             MR. DAMM:  Your Honor, it's the government's position

13   that Mr. Cole was the individual that entered the jewelry

14   stores with the gun and actually obtained the merchandise from

15   the jewelry stores and we have never wavered on that position

16   and we don't intend to suggest in any way that Mr. Wright

17   entered either of the -- or any of the three jewelry stores

18   involved.  We maintain that Mr. Wright was directing the

19   activity of Mr. Cole.  Mr. Wright and Ms. Perreira was

20   assisting in these robberies, but that neither one of them

21   entered the jewelry stores physically at the time of the

22   robberies.

23             THE COURT:  So there weren't -- you're not going to

24   present any witnesses to say, "I saw him in the store

25   committing the robbery.  He was here.  He was part of it" or

1    anything else like that; correct?

2             MR. DAMM:  We -- there -- there are no witnesses that

3    we've interviewed or that are known to us that would identify

4    Mr. Wright as being the individual that actually entered either

5    of the -- or any of the three stores.

6             THE COURT:  All right.

7             I need to talk to Mr. Wright about that and about the

8    number of witnesses he has subpoenaed so that I can figure out

9    how long of a trial this is really going to be.  In order not

10   to prejudice Mr. Wright I'm going to do that in a sealed

11   courtroom so that he and I can have a candid discussion about

12   what his proposed case is going to be.  So I'm going to ask

13   that we clear the courtroom except for Mr. Wright and standby

14   counsel and my court staff.

15            MR. DAMM:  Your Honor, we'll stand by in the hallway.

16   Thank you.

17            THE COURT:  Thank you.  I appreciate that.

18            Mr. Leventhal, if you would too, please.

19            MR. LEVENTHAL:  Thank you.

20            THE COURT:  Thank you.

21            (Courtroom was cleared and sealed.)

22   ///

23   ///

24   ///

25   ///

2:14-cr-357-APG-VCF - Wednesday, March 30, 2016

1   ///

2   ///

3   ///

4   ///

5   ///

6   ///

7   ///

8   ///

9   ///

10   ///

11   ///

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23          (Courtroom unsealed and parties returned.)

24          THE COURT:  Back on the record.

25          I had a conversation with Mr. Wright about his

1    potential witnesses and what I told him was that to the extent

2    he hoped to -- or hopes to call as witnesses the alleged

3    victims, those people that worked at the jewelry stores, who

4    might testify that they didn't see Mr. Wright at the scene of

5    the crime, that they didn't see him committing the crime, that

6    those issues to me seem irrelevant because the government is

7    not going to take the position that he was at the scene in the

8    jewelry stores, and that he -- the government does not intend

9    to put on any evidence and that the government will admit that

10   he was not at the scene in the jewelry stores and none of these

11   witnesses would see him anyhow.

12           Based upon that understanding, and the government

13   should correct me if I'm wrong on that, what I suggested to him

14   was that I don't see any relevance to these witnesses because

15   that issue is not a fact issue that would be presented to the

16   jury and that if the government changed its position and put

17   forth evidence that he was there in the store and these victims

18   may have seen him or something like that, then these witnesses

19   may be relevant.

20           Mr. Damm.

21           MR. DAMM:  Your Honor, we do intend to call a limited

22   number of victims just to establish that there, in fact, was a

23   robbery --

24           THE COURT:  Of course.

25           MR. DAMM:  -- at each one of the stores, but again,

1    we don't anticipate any of them to testify that it was

2    Mr. Wright who was actually in the store.  So he will have the

3    opportunity, I suppose, if he wishes, to ask them whether or

4    not he was there, subject to any rulings that Your Honor may

5    make.

6              We do, however, intend to have some evidence that

7    although Mr. Wright was not -- did not enter the jewelry stores

8    themselves, that he was present at one or more of the robberies

9    in the parking lot adjacent to the jewelry stores.

10             THE COURT:  Okay.  And do you have any witnesses who

11   are going to place him in the parking lot?

12             MR. DAMM:  Not victims, Your Honor.

13             THE COURT:  Okay.  Mr. Cole, presumably and other --

14   okay.  So none of the victims will put him in the parking lot?

15             MR. DAMM:  That's correct.

16             THE COURT:  Obviously the government has to put on

17   evidence to show a robbery occurred, as part of the conspiracy

18   claim and part of the claims -- the charges in the Indictment

19   and Mr. Wright, you certainly have the right to cross-examine

20   those witnesses to say, "In your opinion, you didn't see me, I

21   wasn't there" and all that, but unless the government takes the

22   position that you were in the store, committing these robberies

23   in the store, I don't see the relevance of the victims who

24   would simply confirm that fact because that fact is not an

25   issue.

1        I'm not going to quash the subpoenas at this stage

2   because the government's case may change or some witness may

3   say something no one's expecting and that issue may become

4   relevant.  So I'm not going to say these folks don't have to

5   show up and testify as of right now.  We'll talk about the

6   scheduling, but, at this point I'm not going to release them

7   from their subpoenas and we'll see how the trial develops.  But

8   you certainly can cross-examine any witnesses that the

9   government puts on and have them testify, if you'd like, that

10  they didn't see you, you weren't at the scene.  Whatever you

11  wanted to do that, you certainly have that opportunity to do

12  that.

13        Now, while we were -- while I was having a

14  conversation with Mr. Wright outside the presence of every --

15  all the other parties, he raised an issue that he wanted to

16  make another motion.

17        PRO SE WRIGHT:  Absolutely.

18        THE COURT:  Okay.  I'm going to give you the

19  opportunity to do that now.

20        PRO SE WRIGHT:  All right.

21        This is a Motion to Dismiss the Indictment due to the

22  Indictment being invalid and insufficient to accord Petitioner

23  with adequate notice of the charges against me to ensure that

24  the -- this prosecution would proceed on the basis of facts

25  presented to the Grand Jury and the Indictment does not plead

1    the essential elements of a conspiracy.

2            The inquiry into the validity of an Indictment must

3    focus upon whether the Indictment provides the substantial

4    safeguards to criminal defendants that Indictments are designed

5    to guarantee.  Pursuant to this purpose, an Indictment must

6    furnish the defendant with a sufficient description of the

7    charges against him to prepare his defense, to ensure that the

8    defendant is prosecuted on the basis of facts presented to the

9    Grand Jury to enable him to plead jeopardy against a later

10   prosecution, and to inform the facts alleged so that it can

11   determine the sufficiency of the charges.  To perform these

12   functions, the Indictment must set forth the elements of the

13   offense charged and contain a statement of facts and

14   circumstances that will inform the accused of the specific

15   offense with which he is charged.  *United States vs. Cecil.*

16           In *United States vs. Cruikshank* it was held that

17   another reason for that requirement, that every ingredient of

18   the offense charged must be clearly and accurately alleged in

19   the Indictment and one sometimes overlooked is to enable the

20   court to decide whether the facts alleged are sufficient in law

21   to withstand a Motion to Dismiss the Indictment or to support a

22   conviction if in the event that one should be had.

23           *United States vs. Lamont.*

24           The sufficiency of an Indictment is measured by two

25   criteria; whether the Indictment contains the elements of the

1    offense intended to be charged and sufficiently apprises the

2    defendant of what he must prepare -- I mean, must be prepared

3    to meet, two, and in case any other proceedings are taken

4    against him for a similar offense, whether the record shows

5    with accuracy to what extent he may plead a formal acquittal or

6    conviction.  An Indictment that does not properly inform the

7    accused of what charges he is to face leaves the prosecutor to

8    roam at large and shift its theory of criminality so as to take

9    advantage of each passing dissesitude [sic] of a trial.

10              *Russell vs. United States.*

11              It was also held if it lies within the province of

12   the court to change the charging part of an Indictment to suit

13   its own notions of what it ought to have been, it was held that

14   consistent with the Fifth Amendment a trial judge cannot amend

15   the Indictment itself, either by striking or adding material

16   language, or amounting to the latter by permitting a conviction

17   on evidence or theories not fairly embraced in the charge made

18   in the Indictment.  To allow this would, in effect, permit a

19   defendant to be put on -- put to trial upon an Indictment found

20   not by a Grand Jury, but by a judge, *Russell vs. United States*.

21              It is clear that the government not only is willing

22   to engage in criminal activity to obtain an Indictment and to

23   gain an elicit advantage at trial.  It was held in *United*

24   *States vs. Bonds*, the integrity of the courtroom is so vital to

25   the health of our legal system that no violation of the

HEATHER K. NEWMAN, FOCR, RPR, CCR 774    (702)464-5828

1   integrity, no matter what its motivation, can be conjured or

2   ignored.

3           THE COURT:  And let me interrupt you.  That was --

4   the last case was United States vs. who?

5           PRO SE WRIGHT:  Bonds.

6           THE COURT:  Bonds, B-o-n-d-s?

7           PRO SE WRIGHT:  Yes.

8           THE COURT:  Thank you.

9           PRO SE WRIGHT:  The prosecution is failing to inform

10  the judge of her deception and thereby is usurping the role of

11  the courts and by excusing the prosecutor's unacceptable

12  conduct the court becomes a victim of his duplicity as well as

13  an advocate of the philosophy that a criminal conviction by any

14  means is acceptable.  The fact that the government is willing

15  to stipulate that I am not the one who committed these

16  robberies means she's admitting that the Indictment is invalid

17  and perjured and it must be dismissed.

18          The Indictment reads as follows:

19          "Conspiracy to Interfere with Commerce by Robbery.

20          "Beginning on a date unknown, but no later than April

21  28th, 2014, and continue -- continuing through on -- on or

22  about May 20th, 2014, in the State and Federal District of

23  Nevada, Brian Wright and Daniel Perreira, defendants herein,

24  did agree and conspire together, with others known and unknown,

25  to unlawfully obstruct, delay, and affect commerce as that term

1    is defined in Title 18, United States Code, Section 1951, and

2    the movement of articles and commodities in such commerce, by

3    robbery, as that term is defined in Title 18, United States

4    Code, Section 1951."

5            THE COURT:  Mr. Wright, I'm going -- I'm going to cut

6    you off.  I don't want you to read a four-page Indictment into

7    the record.  The record -- the Indictment is part of the record

8    of the court record for the Court of Appeals to review.  I have

9    it in front me.  I'm reading it with you.  But I don't want you

10   to read four pages into the record.

11           PRO SE WRIGHT:  All right.

12           THE COURT:  So . . .

13           PRO SE WRIGHT:  Well, let me go on and get to the end

14   of it then.

15           THE COURT:  Okay.

16           PRO SE WRIGHT:  It is clear here that this Indictment

17   is invalid and insufficient to accord the defendant adequate

18   notice of the charges against me to ensure that this

19   prosecution would proceed on the basis of facts presented to

20   the Grand Jury, which is a due process violation and a Fifth

21   Amendment violation by not being held to answer to an infamous

22   crime unless presented to a Grand Jury.  Accordingly, this

23   Indictment must be dismissed.  The government has already

24   admitted that I, defendant Wright, did not commit the crimes in

25   the Indictment and the Supreme Court law states that the theory

1    cannot be changed from the charges in the Indictment, nor by

2    the prosecutor or the judge, *Russell vs. United States.*

3              And it's not -- it's not just the fact that -- it's

4    not the fact that the charges is being -- is being changed,

5    it's the defendants is being changed.  It's the suspect, the

6    person that committed this crime.  I'm being charged as the one

7    who committed it.  It's not -- not an aider and abetter to

8    Cole.  It says me and Perreira aided and abetted each other,

9    not Cole.

10             And -- and -- another docket, too, Your Honor, I

11   believe it's Document No. 83 where the government states I

12   aided -- I brandished a weapon.  Well, Mr. Wright -- it states

13   Mr. Wright brandished a weapon or aided and abetted Perreira in

14   her brandishing, or aided and abetted Cole in her brandishing.

15   That's three or four different theories, Your Honor.  It's

16   clear that she's not -- she didn't even know what she wanted to

17   -- what's her theory wanted to be.  But I do know this:  The

18   theory she's saying the government is alleging now is not what

19   was took in front of that Grand Jury or else this Indictment

20   would have said Cole entered them stores and not I did.

21             THE COURT:  Okay.  Ms. Frayn?  Mr. Damm?

22             MS. FRAYN:  Your Honor, the defendant has raised this

23   very issue a number of times in the pleadings before the Court.

24   The government has explained to the defendant that its theory

25   has not changed.  This is simply an additional request to try

1  and convince the Court to produce -- force the government to

2  produce Grand Jury transcripts that are not discoverable at

3  this point because the government does not intend to call the

4  case agent in chief who appeared in front of the Grand Jury.

5          We have expressed to the Court and to the defendant

6  in many ways, in writing and orally, that the theory of the

7  government's case is that Mr. Cole, himself, went into the

8  jewelry stores and robbed them, aided and abetted by Mr. Wright

9  and Mrs. -- Miss Perreira's conspiracy and their direct

10  participation in the support before and after the facts of

11  these robberies.

12          PRO SE WRIGHT:  Your Honor, if I may one more.

13          THE COURT:  Go ahead.

14          PRO SE WRIGHT:  That's not what the Indictment says.

15  She keeps saying the same stuff but that's not what the

16  Indictment says.

17          THE COURT:  I have the Indictment in front of me,

18  sir.  So I can --

19          PRO SE WRIGHT:  Well, okay.  But as long as you --

20          THE COURT:  I can read it.

21          PR SE WRIGHT:  But listen -- one more thing though,

22  Your Honor.

23          (Brief pause in proceedings.)

24          I'm going to need -- I'm going to need a second.  I

25  got to remember what I was going to say.

HEATHER K. NEWMAN, FOCR, RPR, CCR 774    (702)464-5828

1           THE COURT:  Okay.

2           PRO SE WRIGHT:  Sorry about that.

3           THE COURT:  That's all right.

4           Ms. Frayn, address for me, if you would, Mr. Wright's

5    argument that the Indictment says that "Wright and Perreira

6    knowingly and intentionally used and carried a firearm."

7    There's a citation to 18 U.S.C. Section 2, which is aiding and

8    abetting, but it doesn't say that they aided and abetted Cole.

9    That's one of his arguments, that the Indictment doesn't say

10   they aided and abetted Cole, rather he aided and abetted Wright

11   and Perreira.

12           PRO SE WRIGHT:  And I remember what I was going to

13   say, too, whenever you done, Your Honor.

14           (Brief pause in proceedings.)

15           MS. FRAYN:  Your Honor, I'm at a bit of a loss

16   because I didn't bring the Indictment with me so I'm relying on

17   what Mr. Wright and the Court is telling me but, first of all,

18   as the Court is aware and as Mr. Wright has been involved

19   previously, the government does not even have to charge

20   Section 2 expressly on the face of the Indictment.  The theory

21   of principal and aider and abetter is available to the

22   government's theory of case whether charged in the Indictment

23   or not.  Also, it is an incorrect statement of law for

24   Mr. Wright to say that the four corners of the Indictment have

25   to carry all of the information put before this Court and Mr.

1    Wright.  Essentially Mr. Wright's asking for an oral Bill of

2    Particulars, which the government has satisfied in its numerous

3    factual recitations in its pleadings, it's straightforward

4    setting forth of its setting of the case, and the voluminous

5    amount of discovery it has made available to Mr. Wright and

6    continues to make available.

7            The fact that Mr. Cole was not indicted in this case

8    is a right that Mr. Cole had to plead guilty by Information and

9    to go forward and testify against Mr. Wright and Ms. Perreira

10   in this case.

11           THE COURT:  I have no problem with that.  Does -- the

12   point is, I guess, Mr. Wright's argument that the Indictment

13   against him doesn't mention that he was aiding and abetting

14   Cole.

15           MS. FRAYN:  It doesn't have to mention, Your Honor,

16   that he was aiding and abetting anyone because the government

17   does not have to plead that in the face of the Indictment --

18           THE COURT:  The Indictment --

19           MS. FRAYN:  -- under the case law.

20           THE COURT:  The Indictment says that "Wright and

21   Perreira knowingly, intentionally used and carried a firearm."

22           MS. FRAYN:  And they did, Your Honor.  Mr. Wright

23   provided Mr. Cole with the firearms that Mr. Cole took into the

24   robberies and Ms. Perreira took the bag full of jewelry

25   containing the guns and took it away from the robberies.

1          THE COURT:  Okay.  I just wanted to make sure that

2     we're on the same page.

3          That's the same -- with regard to Count Two and Count

4     Four, the brandishing arguments.  Count Three is the

5     Interference with Commerce by Robbery saying that Wright and

6     Perreira obstructed, delayed, and affected commerce.  And so

7     your argument's going to be similar, I presume.

8          MS. FRAYN:  Yes, Your Honor.

9          THE COURT:  Okay.

10          Mr. Leventhal, anything further?

11          MR. LEVENTHAL:  No, Your Honor.  Thank you.

12          THE COURT:  Any comment on that?

13          MR. LEVENTHAL:  No.

14          THE COURT:  Mr. Wright, anything further?  You said

15     you had -- you recalled your next issue.

16          PRO SE WRIGHT:  Yeah.  Again, the government said she

17     don't have to charge Cole which, in fact, she don't have to

18     charge Cole but, again, she does have to mention Cole.  Because

19     like I say, the Indictment, I'm going off the charges in the

20     Indictment which is why I filed the witness list as I did,

21     which is why I did everything, you know, accordingly.

22          Now . . . this is -- the Indictment -- this -- these

23     charges were presented to the Grand Jury to get this

24     Indictment, Your Honor, and by not mentioning Cole one time in

25     this Indictment, and Cole wasn't even indicted, Cole wasn't

1      even brought into federal jurisdiction until six, seven months

2      later.  So, I mean, as I said before, the government's already

3      made it clear that she's not trying to give me the Grand Jury

4      transcripts.  She's actually said in her Motion in Limine that

5      she's basically willing to take any punishment from the Court

6      before she hands them over, Your Honor, and, I mean, it's just

7      obvious here that she's went in front of that Grand Jury and

8      committed some perjury, Your Honor.

9              Now . . . I'm going to be filing a motion to produce

10     testimony from the Grand Jury hearing also, Your Honor, after

11     you rule on this motion, but as I said before . . . I mean,

12     whether she charges him or not, she does have to mention him, I

13     mean, as I just read -- I mean, as I just stated law in this

14     motion.  It has to be clear.  The charges has to be -- they

15     have to be clear, Your Honor.  I mean, you can't just say,

16     "Oh," and add -- you can't just say me and Perreira is charged

17     with these robberies and then add somebody to it and say and

18     this is the theory.  I mean, it's just -- it's not concise.

19     It's not -- I mean, by law, Your Honor, this Indictment must be

20     dismissed.

21             THE COURT:  All right.  Well, I've heard the argument

22     and it's similar to arguments that we've heard before and that

23     you've raised in front of the magistrate judge as well as in

24     front of me before.  I'm going to deny the motion.  You've

25     raised it and if I'm wrong, the Ninth Circuit can reverse me.

1    That's certainly their prerogative.

2              So, let's now talk about the trial setting.

3              Government believes it needs five days.  I'm

4    optimistic it may be shorter than that but we'll see where we

5    go with the trial.

6              I don't believe that at this stage from what I

7    anticipate coming in to trial, I don't believe that Mr. Wright

8    needs the several witnesses who he subpoenaed.  He may need

9    some of them.

10             Given the United States Attorney's Office move that's

11   coming forth this coming weekend and given the need to ensure

12   continuity of counsel, I'm going to delay the start of the

13   trial one week and we're going to start on April 11th instead

14   of April 4th.  And we're going to go the week of April 11th and

15   continuing on April 18th and hopefully finish -- we will finish

16   that week, hopefully early that week, because that should get

17   us through the government's case and to the -- I'm anticipating

18   that Mr. Wright and Ms. Perreira will be able to

19   cross-examine -- obviously they will be able to cross-examine

20   those witnesses that the government calls.

21             Mr. Leventhal, I haven't heard anything from you in

22   terms of number of witnesses you anticipate calling.

23             MR. LEVENTHAL:  Your Honor, I -- before we get there,

24   I -- I indicated to the Court that I've got a -- I've got to be

25   in Memphis on the 13th.  That's already been set up.  It's a

1   case *United States vs. Levine*.

2              THE COURT:  You told me on the 25th.

3              MR. LEVENTHAL:  No.  The 25th I have a vacation

4   scheduled holiday with my kids.

5              THE COURT:  You told me that was the 20th.

6              MR. LEVENTHAL:  The 13th -- Your Honor, I apologize.

7   The 13th -- if I made a mistake.  The 13th I'm in Memphis,

8   14th, and 15th.  The 20th is when I've got the holiday with my

9   kids, 20, 21, 22.  So the 25th is when I could start.  I -- I

10  could be prepared the 25th or the 2nd.  If I misspoke, I

11  apologize, but the 13th, that's when I'm scheduled for Memphis

12  to take the deposition of a witness in a criminal case who has

13  come down with cancer that cannot fly out to his trial and

14  that's been scheduled.  And that's not with local U.S.

15  attorneys, it's with the Department of Justice and -- oh, well,

16  Kate Newman is the local U.S. attorney.  I don't know if she's

17  going to be attending, but, that's -- I apologize.  I -- I

18  wrote it down the 13th, Memphis, and the 20th is the vacation.

19  If the Court wishes to start that week, I can do something

20  about my vacation, but the 13th, that would be somewhat

21  difficult because I've got Department of Justice attorneys that

22  have already planned this as well as the witness in that case.

23              Again, the 25th, the week of the 25th or the 2nd are

24  the two weeks that I have available, starting there, and I

25  didn't look beyond that.

HEATHER K. NEWMAN, FOCR, RPR, CCR 774    (702)464-5828

1           (Brief pause in proceedings.)

2           THE COURT:  Mr. Maningo, who is your trial with in

3   state court on Starr?  Who is that judge?

4           MR. MANINGO:  It's Judge Kephart, Your Honor,

5   Department 19.

6           THE COURT:  How long is the Wells trial anticipated

7   to go, Mr. Maningo?

8           MR. MANINGO:  Five days, Your Honor, was what was

9   represented to the Court.

10          I've learned in the Starr case that one of the

11  attorneys for a co-defendant has filed an appeal and a request

12  for stay.  I believe that's been denied by the Court at this

13  point but, there's a chance that . . . the case might be stayed

14  or continued.  But right now we're still set.

15          THE COURT:  Well, the state court judges were

16  scheduled to be at the same conference that I was planning to

17  attend the week of April 26th.  I don't know if Judge Kephart

18  was planning to skip that or not, but it looks like I'll be

19  skipping that.

20          MR. MANINGO:  I'm not sure, Your Honor.

21          THE COURT:  Maybe I'll take -- since I'm going to be

22  here at trial, maybe he'll get to go.  I'm take his thanks

23  later.

24          I'm joking.

25          I'm just trying to check my calendar to see if I can

1    do this trial the week of the 25th of April.

2            That's okay with the government?  My recollection was

3    that was the date you suggested?

4            MR. DAMM:  Yes, correct, Your Honor.  Thank you.

5            THE COURT:  And that works for Mr. Leventhal?

6            MR. LEVENTHAL:  Yes, Your Honor.

7            THE COURT:  I'll have to talk to Judge Mahan about

8    Wells and see if -- what he wants to do about that.  But since

9    you're standby counsel on this trial, and Mr. Wright wants to

10   go to trial right away, it looks like the week of the 25th is

11   the best we're going to do, continuing into the week of May 2nd

12   for a few days.

13           Anybody wish to be heard on scheduling it to start

14   April 25th, go the entire week of April 25th, continuing into

15   the week of May 2nd for a few days that week?

16           Government's okay.  Mr. Leventhal said he's okay.

17   Mr. Maningo, we've talked about your issues.  Mr. Wright, I

18   know your preference is to go quickly but, that's a three-week

19   delay from what we were anticipating.

20           You said you anticipate filing a motion.  That will

21   give you time to file this additional motion if there is any

22   and . . .

23           PRO SE WRIGHT:  I mean, I rather -- yeah, that's

24   cool.  That's cool.  I can file it.

25           THE COURT:  All right.  We're going to go to trial

1    starting April 25th.

2              Let me go off the record for a second.

3              (Discussion between the Court and clerk.)

4              THE COURT:  Given the need to ensure continuity of

5    counsel for the government, given the discussion we've had on

6    the record the interests of justice outweigh any prejudice

7    caused by the delay, I don't know if the Speedy Trial Act is

8    going to run between now and then but, if it is, I still find

9    there's just reason to delay the trial based on all the issues

10   we've talked about this morning.  So we're going to start the

11   trial on April 25th at 9:00 a.m.

12             We will have another Calendar Call on . . .

13   Wednesday, April 20th, at 9:00 a.m. just to make sure

14   everybody's on pace and we all know what's going -- oh, wait.

15   No, I'm sorry, you're out of town, Mr. Leventhal, on April

16   20th.

17             How about the 19th?

18             MR. LEVENTHAL:  That would be fine.

19             THE COURT:  April 19th Calendar Call, 9:00 a.m., and

20   it is just going to be to confirm any final issues and all

21   that.

22             PRO SE WRIGHT:  Your Honor, if I may?

23             THE COURT:  Yes.

24             PRO SE WRIGHT:  I mean, do we have to keep having a

25   Calendar Call after Calendar Call?  I've never seen four or

1    five Calendar Calls for one trial.  I mean, is that necessary?

2           THE COURT:  Well, typically I have a Calendar Call

3    the week before trial just to give everybody a chance to come

4    in and see if there's any other moving parts that we need to

5    nail down and to rule on any pending motions that are still

6    unresolved.  If you're going to file a motion, then I'd like to

7    have this hearing so that I can give you a ruling on the motion

8    or I can just issue a written order if you don't want to argue

9    it.  So, it's up to you if you're going to file a motion.

10          Does either -- well, let me ask.  Does anybody feel

11   the need to have a further Calendar Call?  I mean, it's more of

12   a convenience to have everybody together to nail down any final

13   issues, but if everybody wants to waive it, fine with me.

14          MR. DAMM:  Your Honor, I've always found Calendar

15   Calls to be helpful to everybody.

16          THE COURT:  To address issues like this.  Much as I

17   don't want to give everybody another opportunity to raise more

18   issues.

19          Let's set it for the 19th at 9 o'clock and if there's

20   any pending issues, we'll resolve them.  If not, it will be a

21   short hearing.  So 9 o'clock on the 19th of April.

22          PRO SE WRIGHT:  But for the record, Your Honor, I

23   oppose any continuance.  I want to let it be known.  I'm not

24   okaying none of this.  I was ready for trial Monday.

25          THE COURT:  I appreciate that and I understand that

1   and that's why I'm trying to squeeze this in as short a period

2   as I can.

3           All right.  There are some pending Motions in Limine.

4   I have not received an opposition yet from any of the

5   defendants.  If you want to file an opposition to any of the

6   Motions in Limine, I will hold off ruling on these and we can

7   address it at Calendar Call on the 19th.  If you want to just

8   address them now, I'm prepared to address them now so that you

9   can all be prepared to get ready for trial.  It just depends --

10  Mr. Leventhal, do you anticipate filing any oppositions to the

11  Motions in Limine?  They weren't really directed at you so

12  much, I think, but they certainly would impact you.

13          MR. LEVENTHAL:  They would and not at this time,

14  Your Honor.  And the Court inquired as to how many witnesses.

15  We may be calling one, maybe two very short witnesses.

16          THE COURT:  Okay.  Thank you for that.

17          MR. LEVENTHAL:  And that would be it.

18          THE COURT:  Thank you.

19          Mr. Wright, do you want to take some time and file a

20  written opposition to the Motions in Limine and I'll delay

21  ruling on these until the 19th when we're all here or I can

22  rule on them now?

23          PRO SE WRIGHT:  I already have, Your Honor.  I

24  already responded.  Should be here today or tomorrow.

25          THE COURT:  Okay.  So I haven't received that yet.

1    So you have filed something.  Do you want me to wait then to

2    read that before I rule on these?

3              PRO SE WRIGHT:  Yes, I do.

4              THE COURT:  Okay.  Then I will hold off on ruling on

5    the Motions in Limine and we'll address those at the Calendar

6    Call on the 19th.  If anybody wants to file a reply, get that

7    in right away.

8              Mr. Stein, with regard to your clients, as I have

9    ruled, my anticipation is most of your clients that have been

10   subpoenaed, if any, by Mr. Wright, probably are not going to be

11   necessary.  Now, I don't know if the government intends to call

12   any of your witnesses as victims and to testify.  I'll leave

13   that to you to talk to the government about that.  With regard

14   to those of your witnesses who have been subpoenaed, I'm not

15   going to quash the subpoenas yet because I -- there is a

16   possibility that they become relevant.  As I sit here today,

17   they don't appear to me to be relevant.  They don't need to

18   show up on the first day of trial because even if they become

19   relevant, it won't be until later in the trial.  So my

20   recommendation is, unless anybody's going to disagree, I will

21   tell these -- tell Mr. Stein to instruct his witnesses they

22   don't need to show up on the first day of trial; that I would

23   have Mr. Stein contact the U.S. Attorney's Office for an update

24   on how the trial is going and when they anticipate needing them

25   and then Mr. Stein, you can come into court and chat with me

1     here in open court in front of everybody to see -- you know, I

2     would say maybe Wednesday or Thursday of that week to see if

3     your witnesses have become relevant for some reason.  But that

4     way they don't have to show up.  You don't have to shut the

5     store down obviously and everything else.

6                Does that work for you?

7                MR. STEIN:  Yes.  That would be fantastic.  Thank

8     you, Your Honor.  And I will speak with the AUSA's office and

9     work out which witnesses they need for their case-in-chief.

10               THE COURT:  Okay.

11               MR. STEIN:  And certainly, you know, they have to --

12    they've been subpoenaed and we'll make them available but, with

13    respect to any other witnesses that may come up, I'll come back

14    on that Wednesday, and certainly will be coordinating with

15    them.  And I will also ask the standby counsel if I could get a

16    list of the witnesses that the defendant subpoenaed so that I

17    know who they are and I can -- when I come back to court, I can

18    speak about them intelligently and not be ignorant about the --

19               THE COURT:  Okay.

20               MR. STEIN:  -- the population of witnesses out there.

21               THE COURT:  Yeah.  And I'm not sure all of them are

22    yours because we did have a different jewelry store also that

23    was involved so not all of the subpoenaed witnesses would be

24    your clients.

25               MR. STEIN:  Right.

1           THE COURT:  But for those of yours -- those of yours

2    that are, certainly check in with -- kind of figure out where

3    we are in the trial and we'll have a better idea whether

4    they're going to be relevant or not but I anticipate we

5    wouldn't need them until the second week, the week of May 2nd.

6    I don't know that it's going to go fast enough, but it's

7    possible late in the first week.

8           MR. STEIN:  Thank you, Your Honor.

9           THE COURT:  Thank you, Mr. Stein.  It's good seeing

10   you again.

11          All right.

12          MR. MANINGO:  Your Honor, just one last thing.

13          THE COURT:  Yes.  Sure.  Mr. Maningo.

14          MR. MANINGO:  Should I be communicating with

15   Department 19 in state court or will Your Honor?

16          THE COURT:  I -- I suggest you do and tell them that

17   I've just set a trial on the 25th.  If they want to chat with

18   me to confirm, I'm happy to talk with them.  You can explain to

19   them it was out of your control, you did your best, but that I

20   have scheduled this on the 25th, that if they want -- like I

21   said, if they want to chat, they can certainly call me.

22          MR. MANINGO:  Very good.

23          THE COURT:  And I recommend you talk to Mr. Smith and

24   I'll put a note down to Judge Mahan as well about Wells and

25   you'll have to figure out if you can squeeze Wells in before

 1    this one or not and go from there.

 2         MR. MANINGO:  Thank you, Your Honor.

 3         THE COURT:  And if there's any -- like I said, any

 4    problem over in Department 19, have Judge Kephart or his office

 5    contact my staff and we'll --

 6         MR. MANINGO:  I appreciate that.

 7         THE COURT:  No worries.

 8         All right.  So I'm going to hold off ruling on the

 9    Motions in Limine.

10         And let me kind of throw out just my initial thoughts

11    on at least courtroom procedure and decorum so you can all

12    think about this and address it if you need to.  But my -- my

13    at least initial inclination is we're going to have all the

14    tables skirted; that I will have all lawyers and Mr. Wright

15    conduct examinations from the tables where they're at, direct

16    and cross-examinations, give opening and closing statements

17    from the tables.

18         As I sit here, I don't anticipate having Mr. Wright

19    restrained or shackled in any way during trial.  I haven't seen

20    outbursts or any reason at this point to have him restrained

21    during trial, so that's my anticipation is to not do that.

22    Obviously if -- if anybody gets out of hand, I'll take

23    appropriate measures at that point.  But I will have everyone

24    conduct examinations from the tables and we'll put skirts up

25    from the beginning.

1          Mr. Damm.

2          MR. DAMM:  Your Honor, I was just going to ask

3     whether or not you would expect us to stand or to remain

4     seated.

5          THE COURT:  I think I'll have you stand -- oh, you

6     can be seated during the examination, sure, that's fine.  I

7     don't have any problem anybody being seated.  That way our

8     microphones pick you up better and it's easier to work from

9     table so . . .  And I'll instruct the jury not to be offended,

10    that I've just told everybody to sit down for various reasons

11    and I'll make sure no one's --

12         MR. DAMM:  Boy, that's going to be a hard habit to

13    break, Your Honor.

14         THE COURT:  I understand.  And I'll think about that.

15    If the parties prefer to stand to conduct it, then I'll

16    certainly give that some thought.  If, Mr. Wright, you're

17    comfortable standing and doing your exams all standing, I'll

18    give that some thought as well.

19         MR. DAMM:  Okay.  Thank you, Your Honor.

20         THE COURT:  And if anybody needs to put something on

21    the projector or hand an exhibit -- I'll have exhibit books up

22    here for the witnesses.  If you need to hand something up or

23    put it on the projector, I'll have my court staff run the

24    documents back and forth.  That way we don't have a lot of

25    extraneous movement in the courtroom.

 1          MS. FRAYN:  Your Honor, may I speak with Mr. Damm for

 2   one second?

 3          THE COURT:  Absolutely.  Yeah.  Go ahead.

 4          (Discussion between Government counsel.)

 5          MR. DAMM:  Thank you.  We just -- we've got a -- a

 6   potential witness issue with the scheduled trial date but, I

 7   think we'll try and . . . given the complexities of picking a

 8   date, I think we'll try and work around it, Your Honor.

 9          THE COURT:  That would be great.  And if we need to

10   take somebody out of order, we'll do that to ensure at least we

11   can get the trial going.  If we need to take a witness out of

12   order, we'll instruct the jury we're doing it out of order,

13   something like that.

14          MR. DAMM:  Very well.  Thank you.

15          THE COURT:  And I'm -- with regard to standing or

16   sitting at table, standing is probably going to be fine as long

17   as we can hear your voices on the microphones.  So, that

18   shouldn't be an issue.  And we'll talk about some additional

19   details at Calendar Call and when I rule on the pending Motions

20   in Limine but I at least wanted to give you some thoughts.

21   That's my initial thinking as of right now.

22          I know there was some question about whether or not

23   any of the defendants would be restrained or shackled.  Based

24   on the case law, I can't do that and won't do it unless there's

25   compelling reason to do so and at this stage I don't have

1    compelling reason to restrain or shackle any of the defendants

2    so I'm not going to do that at this stage.

3              All right.  We've covered a lot of ground.  Is there

4    anything else I need to address today for the parties?

5              MR. MANINGO:  No, Your Honor.

6              MR. DAMM:  Nothing further on behalf of the United

7    States, Your Honor.

8              MR. LEVENTHAL:  No, Your Honor.  Thank you.

9              THE COURT:  All right.  Then I hope that we've got

10   the last scheduling issue we have and everybody's going to be

11   good to go and good luck with the move and the re-igniting of

12   computers and everything else.

13             And Mr. Wright, I'll look for your motion, if you're

14   going to file one.  I'll certainly look for the opposition to

15   the pending motions.

16             With that -- Mr. Wright, anything further from you?

17             PRO SE WRIGHT:  No, Your Honor.

18             THE COURT:  All right.  We're in recess on this

19   matter.  Thank you all for your patience.

20             MR. MANINGO:  Thank you, Your Honor.

21             MR. DAMM:  Thank you, Your Honor.

22             THE COURT:  Off the record.

23             (Proceedings adjourned at 10:41 a.m.)

24

25

HEATHER K. NEWMAN, FOCR, RPR, CCR 774    (702)464-5828

1                              --oOo--

2                  COURT REPORTER'S CERTIFICATE

3

4        I, Heather K. Newman, Official Court Reporter, United

5   States District Court, District of Nevada, Las Vegas, Nevada,

6   do hereby certify that pursuant to Section 753, Title 28,

7   United States Code, the foregoing is a true, complete, and

8   correct transcript of the proceedings had in connection with

9   the above-entitled matter.

10

11  DATED:    _____        _____ /s/ Heather K. Newman_____
                              Heather K. Newman, CCR #774
12                            OFFICIAL FEDERAL REPORTER

13

14

15

16

17

18

19

20

21

22

23

24

25