DANIEL G. BOGDEN
United States Attorney
KIMBERLY M. FRAYN
J. GREGORY DAMM
Assistant United States Attorneys
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
PHONE: (702) 388-6336
FAX: (702) 388-6418

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BRIAN WRIGHT and<br>DANIELLE PERRIERA,<br><br>Defendants. | 2:14-CR-357-APG-VCF<br><br>GOVERNMENT'S TRIAL MEMORANDUM |

COMES NOW the United States of America, by and through DANIEL G. BOGDEN, United States Attorney, and KIMBERLY M. FRAYN and J. GREGORY DAMM, Assistant United States Attorneys, and submits the following trial memorandum pursuant to the Court's order regarding pre-trial procedure.

## I.    PROCEDURAL FACTS

On June 30, 2014, a one count Complaint was filed against Defendant Brian Wright, charging him with a violation of Title 18, United States Code, Section 922(g) - Possession of a Firearm by a Convicted Felon in case number 2:14-MJ-00411-VCF, (doc. no. 1). On July 2, 2014, Defendant Wright was detained and a preliminary hearing was set for July 16, 2014. (2:14-mj-411, Doc. No. 5). On July 15, 2014, a Federal Grand Jury returned a criminal indictment charging the Defendant with one count of Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C.

§§ 922(g)(1) and 924(a)(2). (Case number 2:14-cr-00240-JCM-NJK, Doc. No. 11). On January 27, 2015, the Government's motion to dismiss this indictment against Defendant Wright without prejudice was granted (14-240, Doc. No. 46). The grand jury transcript of the law enforcement summary witness who testified in connection with these charges are not at issue herein because that case was voluntarily dismissed without prejudice and is not presently pending before the Court.

A summary law enforcement witness, testified twice before the grand jury, on the dates mentioned below, in connection with case number 2:14-CR-00357-APG-VCF as follows:

    a) On November 4, 2014, a Federal Grand Jury returned a criminal indictment, charging the Defendant Wright and co-defendant Perreira with 18 U.S.C. § 1951(a) - Hobbs Robbery Conspiracy (Count I); 18 U.S.C. § 1951(a) - Interference with Commerce by Robbery (Count II); 18 U.S.C. § 924(c)(1)(A) – Brandishing a Firearm in Relation to a Crime of Violence (Count III) and 18 U.S.C. § 2 - Aiding and Abetting. (Case number 2:14-cr-357-APG-VCF, Doc. No. 1); and

    b) On January 13, 2015, Defendant Wright was charged by superseding indictment with violating 18 United States Code § 1951(a) - Hobbs Robbery Conspiracy (Count I); 18 United States Code § 1951(a) - Interference with Commerce by Robbery (Count III); 18 United States Code § 924(c)(1)(A) – Brandishing a Firearm in Relation to a Crime of Violence (Counts II and IV); and 18 United States Code § 2 - Aiding and Abetting; and Title 18, United States Code, Section 922(g)(1) and 924(a)(2) – Possession of a Firearm by a Convicted Felon (Count V). (Doc. No 26). Codefendant Perreira is charged along with defendant Wright in Counts I to IV. Calendar Call is presently set for April 19, 2016. The trial date is set for April 25, 2016.

On November 13, 2014, during Defendant Wright's arraignment and plea, Wright entered pleas of not guilty. On that same date, the Government advised the Defendant, his counsel and the Court that the matter was not complex, and that it anticipated the matter would be governed by a

Government Disclosure Statement (GDS). The standard order regarding pretrial procedure issued. (Doc. No. 9). Defendant Wright was detained pending trial, (Doc. No. 10). On November 24, 2014, the Government filed its GDS, which placed Defendant Wright on notice that the Government intended to comply with all of its discovery obligations on an ongoing basis throughout the course of this case. (Doc. No. 17).

On November 18, 2014, during Defendant Perriear's arraignment and plea, Perriera entered pleas of not guilty. (Doc. no. 9). She was joined for Trial with Defendant Wright. Defense counsel Todd Leventhal filed a designation of retrained counsel. (Doc. no. 11). Defendant Perriera was released from custody and remains at liberty under Pretrial Services' supervision pending trial. (Doc. No. 12).

After firing a number of defense counsel, a *Faretta* hearing was conducted on or about June 26, 2015, during which the Court canvassed the Defendant about his desire and ability to go forward without counsel. (Doc. No. 67) Defendant Wright was allowed to precede *pro se*, with Lance Maningo, Esq. appointed as stand by counsel. On or about August 11, 2015, the Government sought additional Faretta canvasing of Defendant Wright. (Doc. No. 92). On or about October 6, 2015, the Court conducted an additional *Faretta* canvas of Defendant Wright and his *pro se* status remained undisturbed. (Doc. No. 123 and 125).

The parties have engaged in vigorous and extensive pretrial motions practice, which the Government does not attempt to summarize herein. The only outstanding motion known to the Government prior to trial is the Defendant's motion to dismiss for speedy trial violations. Government's response is due on or about April 25, 2016.

On or about December 16, 2014, unindicted co-conspirator Philbert Cole was arrested on Complaint case number 2:14-MJ-913-PAL and transferred from state to federal custody. On or about May 20, 2015, Cole pleaded guilty to Count 1: *Conspiracy to Interfere with Commerce by*

*Robbery*, in violation of 18 U.S.C. § 1951; Counts 2, 3, and 4: *Interference with Commerce by Robbery*, in violation of 18 U.S.C. § 1951 and 18 U.S.C. § 2; Count 5: *Brandishing a Firearm During and In Relation to a Crime of Violence*, in violation of 18 U.S.C. 924(c) and 18 U.S.C. § 2. Cole is cooperating with the Government and it is anticipated that he will testify in the Government's case in chief.

The Government announced ready to proceed to trial at the April 19, 2016 calendar call.

## II.  STATEMENT OF THE CASE

The instant case is the culmination of a Las Vegas Metropolitan Police Department ("LVMPD") and Henderson Police Department ("HPD") investigation into a series of jewelry store armed robberies. he Government summarizes the relevant facts as follows:

On April 29, 2014, at approximately 10:30 a.m., an armed robbery was reported at the MJ Cristensen Diamonds store located at 8980 West Charleston Boulevard, Las Vegas, Nevada. See Attachment A, bates number 941, which is attached hereto and incorporated by reference herein. Victim employee M.D. (Maria Domkowski, Manager) described the robber as a black male, 5'11", wearing a dark blue flannel shirt, blue jeans, black gloves, a shoulder length wig, sun glasses, and armed with a black semi-automatic handgun. The gunman, later determined to be co-conspirator Philbert Cole, (case number 2:15-cr-00090-KJD-PAL), entered the store and approached M.D., who was standing behind the glass display case. He then pointed the handgun, at M.D.'s forehead and ordered everyone in the store to lie on the ground.

Co-conspirator Cole gave M.D. several backpacks and told M.D. to put everything from the display case in the bags. M.D. complied with these demands. After the bags were filled, the gunman fled the store on foot. Video of the incident was obtained from the jewelry store. The estimated value of items stolen during the robbery is approximately $545,000.00. Cole will testify that he followed Danielle Perriera into the parking lot and noted where she parked her car. Cole will testify

that he exited the store and placed the backpack with the gun and the stolen jewelry in Defendant Perriera's car, which was unoccupied but was waiting in the parking lot as per the plan. Co-defendant Cole left separately in another vehicle.

On May 8, 2014, at approximately 10:54 a.m., an armed robbery was reported at the Jared's Galleria of Jewelry store located at 2110 North Rainbow Avenue, Las Vegas, Nevada. The robber, later determined to be co-conspirator Philbert Cole, was described by victim employees as a black male, 5'08", wearing an oversized shirt, sunglasses, dark gloves with long "dread" style hair under a "Jamaican" baseball cap. Cole confronted and disarmed the armed security guard, A.T. (Adrian Tamayo, Security Officer) and stole the guard's Glock 22, .40 caliber handgun. Cole, now armed with a gun in each hand, ordered his backpacks to be filed with jewelry. The estimated value of items stolen during the robbery is approximately $319,322.60.

On April 29, 2014, codefendant Wright was found to be a passenger in a white 2006 Chevrolet Impala, which was being driven by J.J., (Julian), Defendant Perriera's boyfriend. The vehicle's license plate was issued to Sun City Auto Rentals. J.J. was arrested on unrelated charges, codefendant Wright was issued a citation and the vehicle was impounded. After his arrest, J.J. placed recorded jail calls to Defendant Perreira at the same telephone number Defendant Perreira used when she reported her vehicle, a while 2011 Nissan Versa stolen from her residence at 2900 Sunridge Heights Parkway #521, Henderson. Id.

On May 19, 2014, at approximately 1:00 p.m., an armed robbery was reported at the MJ Christensen Diamonds located 10400 South Eastern Avenue, Henderson, Nevada. The robber, later determined to be co-conspirator Philbert Cole, was observed to be as a black male wearing a plaid shirt, sunglasses, dark gloves and a tan hat, armed with a black handgun. R.M., (Robert McAfee) a jewelry store employee, stated that the robber approached, pointed the gun at R.M.and made R.M. fill a bag with jewelry from the store's display cases. M.D. was also present during this robbery.

A.H., (Adam Hawkins) the store manager, was in the store's upstairs office when A.H. became aware of the robbery occurring. A.H. retrieved a firearm and ran out the back door of the store. A.H. then observed the robber, (Cole), which he described as a black male, 5'11" 170 lbs, enter a mid-2000's Hyundai sedan. A.H. was able to obtain the vehicle's license plate number - Nevada "978 LGL." The estimated value of items stolen during the robbery is approximately $252,187.00. Cole will testify that Defendant Perreira was in the parking lot, acting as a lookout. Cole states that the plan was for him to again hand off the gun and stolen jewelry to Defendant Perreira. However, that did not happen because he was being chased by A.H. In a subsequent statement to law enforcement, Defendant Perriera admits to being in the victim jewelry store's parking lot and seeing A.H. running across the parking lot holding a gun.

Henderson Detectives determined that the getaway vehicle was registered to Sin City Auto Rentals. Further investigation revealed that Sin City Auto Rentals is owned by F. D., (Faisal Darwiche) who later identified Philbert Cole as the person who had rented the getaway car from Sin City Auto Rentals. F.D. also indicated that Cole had previously rented a white 2006 Chevrolet Impala from him approximately 3-5 weeks prior. F.D. provided investigators with information recorded by the Hyundai's onboard GPS. This information indicated that the vehicle has been in the area of Cole's residence, at the Lantana Apartment Homes located at 6501 West Charleston Boulevard, Las Vegas. Id.

Employees at the Lantana Apartment Homes identified Cole and his brother as the tenants in apartment #144 in building #13. On May 20, 2014, Henderson Detectives conducted surveillance at that location and observed Cole arrive at apartment #144. Cole ran when he was approached by Detectives. He was subsequently apprehended a short distance away. Cole provided a post-*Miranda* statement to Detectives during which he admitted to recently renting a blue Hyundai. Cole refused to answer any questions about the robberies before invoking his right to counsel.

F.D. positively identified Cole by photo line-up as the subject who rented the getaway vehicle connected to the Henderson robbery. Cole was also identified by two people present during the May 19th robbery. A search warrant was executed at Cole's residence and a green dot debit card in the name of T.F., (Tonya Fred), Defendant Wright's girlfriend, was seized. A records check of Nevada Department of Motor Vehicles showed that defendant Wright listed Cole's apartment at the Lantana Apartment Homes as his (Wright's) residence when he obtained an Instruction Permit on May 6, 2014.

Subsequent interviews, beginning on June 5, 2014, conducted between Cole, and members of the Clark County District Attorney's Office, and investigators, led to the identification of co-defendant Brian Wright and Defendant Danielle Perreira. Cole advised that defendant Wright masterminded the robberies, provided Cole with the firearms Cole used in the robberies, and received most of the proceeds from them. Cole identified Perreira as a "getaway driver." Cole would exit the stores, give the guns and the bags of stolen jewelry to Perreira who was waiting outside nearby in a car. Cole would then make his getaway in the opposite direction from Perreira's exit from the scene. According to Cole, Perreira also helped Wright conduct surveillance on the stores prior to the robberies.

On June 6, 2014, Henderson PD investigators executed a search warrant at Wright's residence located at 8102 Yellow Daisy Avenue, Las Vegas. A new Dodge Charger was parked in the driveway. During the search, four (4) bags of marijuana and $23,513.00 cash were recovered. In addition, a .40 caliber Glock handgun black in color, serial number "VNG189" and five rounds of ammunition was recovered from the area above the residence's kitchen cabinets. Defendant Wright was present when the warrant was executed and he was arrested by Henderson Detectives.

In a post-*Miranda* interview, defendant Wright denied any knowledge of the firearm or drugs found in the search. He claimed that he was not a resident at 8102 Yellow Daisy Avenue. He

also denied having any knowledge about the jewelry store robberies. However, Investigators linked Wright to this residence through Nevada Department of Motor Vehicle records which established that he identified this address as his residence when he obtained a driver's license on May 28, 2014.

Wright's girlfriend, T.F. (Tonya Fred) identified Wright as her boyfriend and the person she shares the Yellow Daisy residence with. She also stated that she was unemployed and that Wright had no employment that she was aware of.

The aforementioned black in color Glock firearm located in Wright's residence was forensically tested. No latent fingerprints were recovered from the weapon, magazine, or the ammunition. The firearm was found to have traces of mixtures of male and female DNA on it. These DNA traces could not be conclusively compared to any known reference samples. Law enforcement has not been able to conclusively identify the guns that were brought by co-conspirator Cole to the robberies. However, based on all the known facts and circumstances, the firearm recovered from defendant Wright's residence cannot be excluded as a possible match to one of the firearms used by Cole during the robberies.

On June 6, 2014, Defendant Perriera was consensually interviewed in a non-custodial setting. She admitted as follows:

Perreira knows defendant Brian Wright though her boyfriend, J.J., who met Wright in prison. J.J. was arrested about a month ago and has been sent back to jail on a probation violation. Wright is always borrowing money from her because he never has any money. However, Wright recently put approximately $3,000 down on a Dodge Charger which was purchased under co-defendant Perriera's name and registered to her.

Approximately a month ago, defendant Wright asked her to come to his apartment and drive him to a jewelry store on Eastern near co-defendant Perreira's apartment, which she did. She went into a nearby clothing store. As far as she knew, defendant Wright waited in the car and

did not enter the jewelry store.

She also admitted that on May 19, 2014, she was in the parking lot near the scene of the MJ Christensen robbery, although she denied involvement in the robbery. She did say she saw a white male with a gun in his hand running through the parking lot carrying a gun like he was chasing someone. She then observed a blue vehicle speed out of the parking lot.

When the detective conducting the interview questioned her truthfulness, co-defendant Perreira became tearful and stated "I feel like I was being forced into doing something that I didn't want to do and ultimately it ended up to this." She also asked "Do I have to go on the stand and be a witness? Because I'm afraid of what he is going to do." When the detective asking her questions told her he believed she was involved in the robberies, she stated "I told them that I didn't want to be."

Defendant Perriera challenged this interview, seeking to suppress her statements upon her allegation that it violated her rights pursuant to *Miranda*. (Doc. No. 96). Although her statement was initially suppressed, the District Court overturned that order and agreed to allow the statement to be admitted, in a limited and sanitized format and subject to a limiting instruction during the joint trial of the defendants. (Doc. No. 131 and 187).

Defendant Perriera's residence (2900 Sunridge Heights Parkway #521, Henderson) and her vehicle were searched pursuant to search warrants. Among other things, investigators found: $9,400.00 in United States currency, that is, 9 pink Post-it note bearing $1,000 wrapped around ten $100 bills and an additional four $100 bills, 6 pink Post-it notes bearing descriptions of pieces of jewelry, including a dollar value on each, and a jewelry store ring display stand in Perriera's bedroom at the Sunridge Heights apartment. Investigators also found: $1,817.00 in United States currency and defendant Wright's Nevada driver's Instruction Permit in her vehicle.

### III. <u>PERTINENT LAW</u>

### <u>COUNT ONE</u>

### <u>CONSPIRACY TO INTERFERE WITH COMMERCE BY ROBBERY – ELEMENTS</u>

To prove the charge of Conspiracy to Interfere with Commerce by Robbery in violation of Section 1951 of Title 18 of the United States Code, the Government must prove each of the following elements beyond a reasonable doubt:

First, there was an agreement between two or more persons to commit the offense of Interference with Commerce by Robbery; and

Second, the defendant became a member of the conspiracy knowing of its object and intending to help accomplish it.

A conspiracy is a kind of criminal partnership—an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. It must be found that there was a plan to commit the offense of Interference with Commerce by Robbery.

One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators. On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or

purpose of the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

See Ninth Circuit Criminal Jury Instruction 8.142 and 8.20 (2010) (Modified); Third Circuit Criminal Jury Instruction 6.18.1951-7 (2009); Title 18, United States Code, Section 1951(b)(1).

## COUNTS TWO AND FOUR

### USE OF A FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE – ELEMENTS

To prove the charge of Use of a Firearm During and in Relation to a Crime of Violence in violation of Section 924(c) of Title 18 of the United States Code, the Government must prove each of the following elements beyond a reasonable doubt:

First, the Defendant committed the crime of Interference with Commerce by Robbery as charged in Counts One, Three, Five, Eight, and Eleven of the Indictment; and

Second, the Defendant knowingly used or carried a firearm during and in relation that crime as charged in that particular count of the Indictment.

A defendant "carried" a firearm if he knowingly possessed it and held, moved, conveyed or transported it in some manner on his person or in a vehicle.

A defendant "used" a firearm if he actively employed the firearm during and in relation to the crime of Interference with Commerce as charged in the Indictment.

A defendant used or carried a firearm "during and in relation to" the crime if the firearm facilitated or played a role in the crime as charged in that particular count of the Indictment.

The term "brandish" means, with respect to a firearm, to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly or indirectly visible to that person.

*See Watson v. United States*, 552 U.S. 74, 83 (2007); Ninth Circuit Criminal Jury Instruction 8.71; 8.72 (2010).

## COUNT THREE

## INTERFERENCE WITH COMMERCE BY ROBBERY – ELEMENTS

To prove the charge of Interference with Commerce by Robbery in violation of Section 1951 of Title 18 of the United States Code, the Government must prove each of the following elements beyond a reasonable doubt:

First, the Defendant took or obtained the personal property of another, or from the presence of another, against the victim's will, by means of actual or threatened force or violence or fear of injury, whether immediately or in the future;

Second, the Defendant intended to obtain or take property that he was not entitled to receive; and

Third, commerce from one state to another potentially was or would have been affected in some way.

The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or anyone in his company at the time of the taking or obtaining.

Conduct affects interstate commerce if it in any way interferes with, changes, or alters the movement or transportation or flow of goods, merchandise, money, or other property in commerce between or among the states. The effect can be minimal. It is not necessary to prove that the Defendant intended to obstruct, delay or interfere with interstate commerce or that the purpose of the alleged crime was to affect interstate commerce.

All that is necessary to prove the effect on interstate commerce element is that the natural consequences of the offense potentially caused an effect on interstate commerce to any degree, however minimal or slight.

See Ninth Circuit Criminal Jury Instruction 8.142 (2010); Third Circuit Criminal Jury Instruction 6.18.1951-7 (2009); Title 18, United States Code, Section 1951(b)(1).

To prove the charge of Interference with Commerce by Robbery in violation of Section 1951 of Title 18 of the United States Code, the Government must prove each of the following elements beyond a reasonable doubt:

First, the Defendant took or obtained the personal property of another, or from the presence of another, against the victim's will, by means of actual or threatened force or violence or fear of injury, whether immediately or in the future;

Second, the Defendant intended to obtain or take property that he was not entitled to receive; and

Third, commerce from one state to another potentially was or would have been affected in some way.

The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or anyone in his company at the time of the taking or obtaining.

Conduct affects interstate commerce if it in any way interferes with, changes, or alters the movement or transportation or flow of goods, merchandise, money, or other property in commerce between or among the states. The effect can be minimal. It is not necessary to prove that the

Defendant intended to obstruct, delay or interfere with interstate commerce or that the purpose of the alleged crime was to affect interstate commerce.

All that is necessary to prove the effect on interstate commerce element is that the natural consequences of the offense potentially caused an effect on interstate commerce to any degree, however minimal or slight.

See Ninth Circuit Criminal Jury Instruction 8.142 (2010); Third Circuit Criminal Jury Instruction 6.18.1951-7 (2009); Title 18, United States Code, Section 1951(b)(1).

## COUNT FIVE

### FELON IN POSSESSION OF A FIREARM – ELEMENTS

To prove the charge of Felon in Possession of a Firearm in violation of Section 922(g)(1) of Title 18 of the United States Code, the Government must prove each of the following elements beyond a reasonable doubt:

First, the Defendant knowingly possessed a firearm;

Second, the firearm had been shipped or transported from one state to another, or in foreign commerce; and

Third, at the time the Defendant possessed the firearm, he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

## IV. EVIDENTIARY AND LEGAL ISSUES

The Government anticipates proving its case through the testimony of the various victims of the robberies, police officers, forensic analysts, crime scene analysts, detectives, and federal agents who helped in the investigation and/or preparation of the case against the Defendants. The Government does *not* have to prove that the Defendant owned the firearm; the Government need only prove that he was in possession of it. Consequently, evidence as to who actually owned the

firearm is irrelevant. The Government does not anticipate any significant evidentiary issues to arise during the course of this trial.

### 1. Authentication of Recordings

The Government anticipates introducing various audio and video recordings through the course of the trial. Federal Rule of Evidence 901's authenticity requirement is satisfied "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). For a recording to meet the authenticity requirement, a trial court, in the exercise of its discretion, must be satisfied that the recording is "accurate, authentic, and generally trustworthy." *United States v. Mouton*, 617 F.2d 1379, 1383-84 (9th Cir. 1980); *United States v. King*, 587 F.2d 956, 961 (9th Cir 1978). The burden is on the Government "to produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of ... recordings ...." *Mouton*, 617 F.2d at 1384 (citation omitted).

In the present case, the Government anticipates that personnel from the victim businesses will identify the various surveillance recordings from their businesses and/or witnesses involved in the robberies will identify the surveillance recordings and testify as to the recordings' completeness and accuracy. The Government also anticipates introducing audio recordings of various calls the Defendant made from the Henderson Detention Center and the Nevada Southern Detention Center. Federal Rule of Evidence 901(b)(5) provides: "An opinion identifying a person's voice—whether heard firsthand or through mechanical or electronic transmission or recording—based on hearing the voice at any time under circumstances that connect it with the alleged speaker" satisfies the requirement of authenticating or identifying an audio recording of a telephone conversation. This is not a very high bar. *See United States v. Mendiola*, 707 F.3d 735, 740 (7th Cir. 2013) (collecting cases). In the present case, the Government anticipates that one of the agents who participated in the investigation will identify the Defendant's voice on the proposed audio recordings.

## 2. Identification

Witnesses to the robberies and/or one or more police officers may testify as to their identification of the defendant as the perpetrator. Non-expert opinions are admissible where rationally based on the perception of the witness and helpful to a clear understanding of testimony or the determination of a fact in issue. Fed. R. Evid. 701. Lay witness identifications are rationally based under Rule 701 if "based upon personal observation and recollection of concrete facts." *United States v. Beck*, 418 F.3d 1008, 1015 (9th Cir. 2005) (quoting *United States v. Allen*, 787 F.2d 933, 935 (4th Cir. 1986)). Lay witness testimony identifying a person in a photographic reproduction is admissible if that witness had "sufficient contacts with the defendant to achieve a level of familiarity that renders the lay opinion helpful." *Beck*, 418 F.3d at 1015 (quoting *United States v. Henderson*, 68 F.3d 323, 326 (9th Cir. 1995)). The quantity of a witness's prior exposure to the Defendant goes only to the weight of the testimony and does not affect admissibility. *Beck*, 418 F.3d at 1015.

The evaluation of whether the witness had sufficient contacts with which to form a relevant opinion depends on the totality of the circumstances. *Id.* Factors which aid in this evaluation include "the witnesses' familiarity with the defendant's appearance at the time the crime was committed, the witnesses' familiarity with the defendant's customary manner of dress ... [when] related to the clothing of the person depicted in the [photographic reproduction], whether the defendant disguised his or her appearance during the offense or altered his or her appearance before trial, and whether the witness knew the defendant over time and in a variety of circumstances, such that the witnesses' lay identification testimony offered to the jury a perspective it could not acquire in its limited exposure to the defendant." *Id.* (internal quotations and citations omitted). The testimony shall not be inadmissible based on the absence of any single factor because any potential weakness in the testimony may be highlighted during cross-examination. *Id.*

In *Beck*, the defendant was convicted of bank robbery partially based on his parole officer's surveillance photo identification. *Id.*, at 1011. The parole officer based his identification on four personal contacts he had with the defendant over the course of two months. These meetings totaled approximately seventy minutes. *Id.*, at 1015. The parole officer's familiarity with the defendant was achieved contemporaneously with the commission of the crime. *Id.*, at 1012. There was no evidence that the defendant ever altered his appearance or that his customary manner of dress was relevant or utilized in the identification. *Id.*, at 1015. The court held that the parole officer's identification testimony was rationally based on sufficient contacts with the defendant. *Id.* The Government anticipates in the instant case that several of the detectives (and/or another witness personally familiar with the Defendant) may be able to identify the Defendant as the perpetrator of the charged offenses, based on *inter alia*, personal contact with the Defendant.

3. <u>Admissibility and Extent of Expert Testimony</u>

The Government intends to introduce the testimony of experts in latent print comparison. The Government previously filed a Notice of Expert Testimony on June 1 and June 18, 2015. *See* Docket ##84 and 85. A witness may testify as an expert if they have specialized knowledge that "will assist the trier of fact to understand the evidence." Fed. R. Evid. 702. "Such testimony is admissible only if it is both relevant and reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable ...." Fed. R. Evid. 401. Judges enjoy broad latitude in determining both how they will gauge reliability as well as the ultimate determination of the reliability of expert testimony. *Kumho Tire Co.*, 526 U.S. at 142.

V. <u>EXHIBIT LIST</u>

The Government will separately file an exhibit list.

VI. <u>WITNESSES</u>

At this point, the United States anticipates calling the following witnesses in its case-in-chief:

1. Sanja Uljar,
2. Anthony Discosola,
3. LVMPD Det. Scott J. Kavon P# 04131
4. Jennifer Miller
5. Heather Sweanigen
6. Adam Hawkins
7. Philbert Cole
8. Adrian Lugo Tamayo
9. Marcus Christensen
10. Timothy Patrick Mille
11. Briana K. Ware, sales person
12. Robert McAfee, employee
13. HPD Det. Christopher Aguiar #1395
14. HPD Det. Michael Condratovich #924
15. HPD Crime Scene Analyst J. Self #1370
16. Faisal Darwiche, owner Sin City Auto
17. HPD Det. Hoska #777 surveillance and recovered black Nokia cell phone
18. HPD Det. A. Niswonger #1003
19. HDP Det. A. Luszczyk #1333 traffic stop on car, surveillance on car at house
20. HPD Crime Scene Analyst P. Farrell #1267
21. Tonya Fred
22. Det. F. Fuentes #621
23. ATF Nexus - Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Michael LaRusso.
24. Fingerprint- Federal Bureau of Investigation Physical Scientist/Forensic Examiner Aubree L. Crews
25. HPD Kent Timothy Latent Print Examiner
26. DNA - Federal Bureau of Investigation Forensic Examiner Tiffany L. Smith.
27. Donna Cole
28. DMV Investigation Brian Lacy
29. HPD Crime Scene Technician Elisha Sorum 2102
30. HPD Crime Scene Technician Jennifer Hornback 1826

## VII. JURY INSTRUCTIONS / VOIR DIRE

The Government's proposed jury instructions and *voir dire* were filed on April 20, 2016. Docket #266 and #267.

## VIII. CERTIFICATE OF READINESS FOR TRIAL

The undersigned hereby certify that they are the trial counsel for the United States herein; that subpoenas have been issued for all non-governmental employees who are in the United States and will testify herein. The matter is ready for trial on April 25, 2016.

. . .

. . .

. . .

## IX. SERVICE AND FILING OF TRIAL MEMORANDUM

The undersigned certifies that, before jury selection in this case, the original copy of this Trial Memorandum will be filed in open court and a copy served upon counsel for the Defendant.

DATED this 20th day of April, 2016.

DATED this 20th day of April, 2016.

Respectfully submitted,

DANIEL G. BOGDEN
United States Attorney

/s/ Kimberly M. Frayn
KIMBERLY M. FRAYN
J. GREGORY DAMM
Assistant United States Attorneys