1

1                    UNITED STATES DISTRICT COURT

2                         DISTRICT OF NEVADA

3

4  UNITED STATES OF AMERICA,        )
                                    )  Case No. 2:14-cr-357-APG-VCF
5                 Plaintiff,        )
                                    )  Las Vegas, Nevada
6           vs.                     )  Monday, April 25, 2016
                                    )  Courtroom 6C, 9:13 a.m.
7  BRIAN WRIGHT and                 )
   DANIELLE PERREIRA,               )  JURY TRIAL DAY ONE -
8                                   )  Pretrial Conference Only
                  Defendants.       )
9  _____)  C E R T I F I E D   C O P Y

10

11           REPORTER'S PARTIAL TRANSCRIPT OF PROCEEDINGS

12

     BEFORE:        THE HONORABLE ANDREW P. GORDON,
13                    UNITED STATES DISTRICT JUDGE

14

15

16

17

18   APPEARANCES:

19   See next page

20   COURT REPORTER:

21           Heather K. Newman, RPR, CRR, CCR #774
             United States District Court
22           333 Las Vegas Boulevard South, Room 1334
             Las Vegas, Nevada  89101
23           (702) 464-5828

24

25   Proceedings reported by machine shorthand, transcript produced
     by computer-aided transcription.

2

1    APPEARANCES:

2    For the Plaintiff:

3            UNITED STATES ATTORNEY'S OFFICE
             BY:  KIMBERLY M. FRAYN
4                 J. GREGORY DAMM
             501 Las Vegas Boulevard South, Suite 1100
5            Las Vegas, Nevada 89101
             (702) 388-6336
6
     For the Defendant Brian Wright:
7
             BRIAN WRIGHT
8            PRO SE
             Nevada Southern Detention Center
9            2190 East Mesquite Avenue
             Pahrump, NV  89060
10
             BELLON & MANINGO, LTD.
11           BY:  LANCE A. MANINGO
             732 South Sixth Street, Suite 201
12           Las Vegas, NV  89101
             (702) 452-6299
13
     For the Defendant Danielle Perreira:
14
             LEVENTHAL AND ASSOCIATES
15           BY:  TODD M. LEVENTHAL
             626 South Third Street
16           Las Vegas, NV  89101
             (702) 472-8686
17
     Also present:
18
             Josh Mahan
19           Special Agent, FBI

20

21

22

23

24

25

3

1          LAS VEGAS, NEVADA; MONDAY, APRIL 25, 2016; 9:13 A.M.

2                              --oOo--

3                    P R O C E E D I N G S

4

5          *** EXCERPT OF TRANSCRIPT OF PROCEEDINGS ***

6          COURTROOM ADMINISTRATOR:  All rise.

7          THE COURT:  Thank you.  Please be seated everyone.

8          COURTROOM ADMINISTRATOR:  This is the time set for

9  day one of the Jury Trial in 2:14-cr-357-APG-VCF, United States

10  of America vs. Brian Wright and Danielle Perreira.

11          Counsel, your appearances please.

12          MS. FRAYN:  Good morning, Your Honor.  Kimberly Frayn

13  and Gregg Damm for the United States.  Also at counsel table,

14  FBI Special Agent Josh Mahan.

15          THE COURT:  Good morning to all three of you.

16          MR. MANINGO:  Good morning, Your Honor.

17  Lance Maningo, standby counsel to Brian Wright.  Mr. Wright is

18  also present.

19          THE COURT:  Good morning to both of you.

20          PRO SE WRIGHT:  Good morning, Your Honor.

21          MR. LEVENTHAL:  Good morning, Your Honor.

22  Todd Leventhal on behalf of Ms. Perreira.  She's present.

23          THE COURT:  Good morning.

24          Good morning, Ms. Perreira.

25          You may all be seated.

4

1          Before we bring the jury in I have some issues to

2     discuss.

3          Question for the Government.  Have you filed a list

4     of witnesses and exhibits you intend to use at trial?

5          MS. FRAYN:  Your Honor, our witness list is contained

6     in the Trial Memorandum that we filed this morning.  My legal

7     assistant is making some changes -- last minute changes to the

8     finalization of the binders and the list and it will be

9     available before we conclude jury selection.

10          THE COURT:  Have you given to the defendants the list

11     of witnesses and exhibits you intend to use at trial?

12          MS. FRAYN:  We have given them the Trial Brief which

13     contains the list of witnesses.  I don't have a finalized

14     exhibit list yet to give them.  I will give it to them this

15     morning when it gets finalized.

16          THE COURT:  So the defendants, as they sit here,

17     don't know what exhibits you intend to use at the trial that's

18     starting supposedly right now and they don't know what

19     witnesses you're going to call until five minutes ago.  Is that

20     true?

21          MS. FRAYN:  Yes, Your Honor.

22          THE COURT:  How is that fair to the defendants to

23     prepare for a trial and to go to trial not knowing what

24     witnesses are going to be called and not knowing what exhibits

25     are going to be introduced against them?  Tell me how that's

5

1    fair and just.

2          MS. FRAYN:  Your Honor, the Government's not required

3    to provide the witness list until the day of trial.

4          THE COURT:  Did you read my Pretrial Order?

5    Apparently not because it says . . .

6          MS. FRAYN:  I'm sorry, Your Honor.  I looked for it.

7    I only found Judge Dawson's Pretrial Order.

8          THE COURT:  Will you -- will you -- I can't hear you.

9    Will you point the --

10         MS. FRAYN:  I'm sorry.

11         THE COURT:  That's okay.

12         MS. FRAYN:  I -- I beg your pardon, sir.  I looked

13   for the Pretrial Order.  The only one I found was the one

14   Judge Dawson had put down.

15         THE COURT:  I issued a Order Regarding Trial February

16   16th of 2016.  It's Document No. 200.  It's not the first one

17   that I've issued in this case and it says . . . Paragraph 7,

18   dealing with exhibits, "No later than 12 noon on the day of

19   Calendar Call counsel shall electronically file their complete

20   exhibit list."  Paragraph 9 states, "No later than noon on the

21   day of Calendar Call counsel shall electronically file a list

22   of witnesses expected to be called for use by the Court during

23   jury selection."  It also discusses a Trial Memorandum and the

24   like.  We also discussed at the last Calendar Call that all of

25   those things were due on Tuesday.  You requested an extension

2:14-cr-357-APG-VCF - April 25, 2016

6

1    for jury instructions and voir dire and I gave that, but I

2    still don't have, and they have not been filed, a witness and

3    exhibit list.  So how can the defendants prepare for trial not

4    knowing what witnesses and exhibits are going to be tried --

5    called?

6              MS. FRAYN:  The -- I'm sorry, Your Honor, the -- the

7    witness list is contained in the Government's Trial Memorandum.

8              THE COURT:  Which they got this morning.

9              MS. FRAYN:  Filed this morning, yes, sir.

10             THE COURT:  Has this affected trial preparation for

11   them, to be able to prepare right now for trial?

12             MS. FRAYN:  All of the witnesses that are contained

13   on the list are contained in the discovery production,

14   Your Honor.

15             THE COURT:  Okay.  And that names probably 60 or 70

16   witnesses, potentially.  I know you don't intend to call 60 or

17   70 witnesses.

18             So you've -- I want -- I want to be clear so I

19   understand what's going on.  You didn't think you had to give

20   the defendants a list of witnesses that were going to be called

21   at trial or a list of exhibits that were going to be used at

22   trial, until the morning of trial.  Is that the Government's

23   position?

24             MS. FRAYN:  That's correct, Your Honor.

25             THE COURT:  Mr. Leventhal?  Mr. Wright?  Mr. Maningo?

1           MR. MANINGO:  The Court's indulgence, Your Honor.

2   Just one moment.

3           THE COURT:  Certainly.  Take your time.

4           Here's my concern.  Not having those impacts my

5   preparation.  I got your Motions in Limine, which were filed

6   10:45 on Saturday night.  That's a different issue we'll talk

7   about.  One of your Motions in Limine mentions a Ms. Wurtz and

8   a prior trial.  Now, I presume that's a typo that you cut and

9   pasted from somebody else's memo and screwed it up.  Okay.  But

10  I'm going through this and my first reaction is, Wurtz, who the

11  heck is Wurtz?  I don't have a witness list to even look to see

12  who Wurtz is.  I look, as I'm preparing my voir dire for the

13  jury to come in this morning and say, "Here's the list of

14  witnesses so that you can tell if you know any of these

15  witnesses," I don't have a list.  I looked to the list of

16  exhibits and the witnesses to see are we going to have some

17  kind of evidentiary issues that I ought to maybe think about

18  ahead of time.  I don't have that.

19          If I'm struggling with preparing for trial, I don't

20  know how the defendants are preparing for trial.  Mr. Wright is

21  representing himself in detention in Pahrump.  He filed a

22  witness list.  He filed a list of instructions and voir dire.

23  He at least realized that had to be filed.  Mr. Wright

24  apparently read my order.  I didn't get anything from

25  Mr. Leventhal but, if they're not going to call any witnesses

1    or exhibits, then that's their answer.

2            So I'm in a quandary.  I couldn't prepare adequately

3    it felt like -- I mean, I prepared, and I did the best I could

4    with resources and my clerks and access to computers and the

5    like, but I've got a pro se defendant sitting here in detention

6    and I've got a represented defendant who are preparing for

7    trial with their liberties at stake.

8            MS. FRAYN:  Your Honor --

9            THE COURT:  And I'm trying to maintain my composure

10   as I sit here and talk to you because I've spent the last four

11   or five days borderline irate hoping I would get something.

12           MS. FRAYN:  Your Honor, if I may.

13           THE COURT:  You may.

14           MS. FRAYN:  The Government did file its confidential

15   Trial Memorandum which contained a witness list and a draft

16   exhibit list on Wednesday afternoon as instructed --

17           THE COURT:  You didn't file it; you apparently

18   e-mailed it.

19           MS. FRAYN:  No, we gave it to the clerk which I

20   discussed with the clerk -- okay.  I apologize.  I reviewed the

21   docket sheet.  There are, as the Court is aware, hundreds of

22   items.  I looked and looked and pulled up documents.  The only

23   Pretrial Order I found was Judge Dawson's.  That is completely

24   my mistake and I apologize.  I spoke with the clerk following

25   Calendar Call and I did as she directed me to do.  Completely

1    my mistake, as to that.  It's completely my mistake.  I

2    apologize.

3            THE COURT:  I appreciate -- I appreciate that.  I

4    appreciate your taking responsibility.  But now my bigger

5    struggle is, not because you've accepted responsibility but my

6    big struggle all along has been, the rights of these two

7    defendants to appropriately prepare for trial and to

8    appropriately prepare to defend themselves with their liberties

9    on the line.

10           Mr. Maningo.

11           MR. MANINGO:  Thank you, Your Honor.  I'm only

12    standby counsel --

13           THE COURT:  Understood.

14           MR. MANINGO:  -- but Mr. Wright is preparing for jury

15    selection and possibly opening statements so he asked me to

16    make representations this morning.

17           In addition to the Trial Brief that came over at 8:15

18    this morning, I brought over three binders of *Jencks* material

19    for Mr. Wright.  I understand the *Jencks* case and the

20    disclosure, but I just want to make a clear record of what

21    Mr. Wright's dealing with this morning.  We have, I'm

22    estimating, a thousand pages of new material.  There's the two

23    Motions in Limine that you mentioned and they're not just

24    one-page motions, they are --

25           THE COURT:  I've seen them.  I've read them.

1          MR. MANINGO:  They're significant.  And important.

2          I think Mr. Wright has the same concerns that

3  Your Honor has with the fairness of proceeding under these

4  circumstances, but as you know, Mr. Wright has been pushing

5  forward to have his trial.  We are -- and he's in a quandary,

6  as is the Court, I suppose.

7          THE COURT:  I -- rest assured, I'm not delaying the

8  trial.  Here's what I'm thinking right now.

9          MR. MANINGO:  Okay.

10          THE COURT:  And I'm going to ask the parties for --

11          MR. MANINGO:  Well, I was just going to -- if I just

12  may finish, Your Honor --

13          THE COURT:  No.  Go ahead.  I'm sorry.

14          MR. MANINGO:  -- I didn't mean to interrupt.  That

15  Mr. Wright would potentially be agreeable to the continuance if

16  he was not to remain in custody.  That was the representation

17  that was made.

18          THE COURT:  Well, that's a possibility also.  But

19  given that he has repeatedly sought to invoke his speedy trial

20  rights . . . as I've been trying to figure out what to do in

21  this situation, my thoughts run from dismissal, to ordering

22  that the Government can't call any witnesses or exhibits

23  because they haven't been timely identified and produced, to

24  saying I'm going to delay the start -- we're going to pick a

25  jury, we're going to delay the start of evidence four days that

11

1     they would have had if they got it Wednesday, that they would

2     have had Thursday, Friday, Saturday, Sunday to prepare,

3     Government has Friday to put its case on and it's going to end

4     on Friday like they said all along and then the defendants have

5     Monday and Tuesday the following week.  Because I'm struggling

6     to find out how this is fair to the defendants.

7            Mr. Leventhal, you were going to get up.  If you've

8     got other ideas or -- make a record.

9            MR. LEVENTHAL:  I will just make a record for my -- I

10    have not received the *Jencks* materials because I was out last

11    week preparing for this with all of the other CDs, so, it was

12    very difficult for even me to get the material.  I had Mae from

13    the U.S. Attorney's Office open up a box for me that she

14    actually downloaded the Motions in Limine to.

15            I mean, I've been doing this long enough that I can

16    pretty much guess who the -- some of the witnesses were.  I was

17    a little surprised to see that Cole's mother wrote a statement

18    to Your Honor.  I don't know if Your Honor saw that, as a --

19    it's entitled Victim Impact Statement.

20            THE COURT:  I don't . . . think I have that.

21            MR. LEVENTHAL:  It was entitled "To the Honorable

22    Judge Andrew Gordon."  It was dated April 1st.  I received this

23    this weekend.  It's a Victim Impact Statement from Donna Marie

24    Cole and it indicated that --

25            THE COURT:  I don't have -- if I have it, I haven't

2:14-cr-357-APG-VCF - April 25, 2016

12

1    seen it.

2            MR. LEVENTHAL:  It indicated that Ms. Cole was going

3    to be a witness in this case.  So, there are some surprises

4    that I'm not ready for in terms of that.

5            I would motion the Court to dismiss at this time

6    then, if that's what the Court is asking me for.

7            PRO SE WRIGHT:  I would join in that motion,

8    Your Honor.

9            THE COURT:  Well, before I entertain that motion, I

10   need to get more information.

11           (Brief pause in proceedings.)

12           Off the record for a second.

13           (Off-the-record discussion with staff.)

14           THE COURT:  Mr. Maningo, you mentioned three binders

15   of *Jencks* material.

16           MR. MANINGO:  Let me look, Your Honor, yes, sir.

17           I received this -- my secretary worked over the

18   weekend and it looks like we received bate stamps 7791 through

19   8923, I believe.  I honestly haven't looked at all of it,

20   Your Honor, so, I don't want to make any false statements.

21           THE COURT:  And when did you receive those?

22           MR. MANINGO:  The notes from my office show that we

23   received this -- some of it on March 22nd, which I understand

24   is okay, and some of it on April 20th and then more, again, on

25   April 22nd.

13

1           THE COURT:  Thank you.

2           MR. MANINGO:  And I -- I -- and again, Your Honor, I

3   say that just with a brief look at the notes.

4           THE COURT:  Understood.

5           MR. MANINGO:  If the Government has different

6   representations, I'll yield.

7           THE COURT:  That's fine.  Understood.

8           Ms. Frayn.

9           MS. FRAYN:  Your Honor, the Government would advise

10  the Court and the defendants that two things were happening in

11  the recent productions; one is that we were preparing our --

12  our electronic Sanctions exhibits in anticipation of being able

13  to assist Mr. Wright and Ms. Perreira should they ask for

14  reports and things that would not necessarily be in evidence.

15  And so a number of the things that were re-batesed, re-bates

16  numbered were batesed in series to be loaded into Sanctions and

17  simply produced again so the defendants could refer to those

18  numbers when asking the Government to pull it up under the

19  electronic monitoring.  I was attempting to be helpful and I

20  apologize if that was not helpful.

21          THE COURT:  Well, no --

22          MS. FRAYN:  That was my intent, was to be helpful, to

23  batch together the Henderson reports and the Metro reports so

24  that it would be easy for defense to request that we show those

25  to the jury in connection with their inquiry.

2:14-cr-357-APG-VCF - April 25, 2016

14

```
 1          THE COURT:  And that's -- that's -- helpful is always

 2   good.  I'm trying to figure out what -- you said you're

 3   preparing electronic Sanctions exhibits.  I don't understand

 4   that.

 5          MS. FRAYN:  If the Court is aware of the Government's

 6   practice, often we have an automated litigation support person.

 7          THE COURT:  Sure.

 8          MS. FRAYN:  In this instance it will be Marissa

 9   because Mary Ann's gone and then after the first day or two,

10   Ms. King will be back and she sits at her computer and she has

11   loaded, electronically, not only the Government's exhibits that

12   it wishes to display once admissions into evidence have been

13   made, but also she has access to any of the discovery -- any of

14   the discovery that can be captured electronically, captured by

15   bates number, available to any party that wishes, "Oh, I forgot

16   that piece of paper.  I really wanted to see it.  I -- do you

17   have this bates number?"

18          THE COURT:  The question I had is you use the term

19   "electronic Sanctions exhibits" and I don't --

20          MS. FRAYN:  Oh, I'm sorry, it's the -- I'm so sorry.

21   It's just the software that runs it.

22          THE COURT:  Software.  Okay.

23          MS. FRAYN:  It's our -- what we call our program.

24   I'm sorry.

25          THE COURT:  Okay.  That's what I didn't understand.
```

1    Okay.  Thank you.  So, I appreciate you -- okay.

2              So, what you're saying is what was produced to

3    Mr. Wright in the binders was stuff that's already been

4    previously disclosed.

5              MS. FRAYN:  Not all of it.

6              THE COURT:  Okay.

7              MS. FRAYN:  But a majority of it, yes, sir.  And I

8    will just tell the Court so no one is caught surprised, there

9    were -- two detectives testified in Ms. Perreira's Suppression

10   Hearing.  There's a transcript for that, which I believed had

11   been filed in open record during the motion practice between

12   Mr. Leventhal and I.  I wanted to make sure that that was

13   available to Mr. Wright because later on in the witness list

14   the Government is going to call those witnesses.  It -- it's

15   available in the open record, but to be assistive and helpful,

16   I asked my assistant to bates it again and push it out this

17   morning so it would be at his fingertips.  That is absolutely

18   not new information.  And so yes, there are some limited bits

19   of new information that the Government continues to push out,

20   as is its obligation, but the bulk of what has been produced

21   has been previously produced.  And I don't want to misrepresent

22   to the Court, not all of it, but the bulk of it.

23              THE COURT:  I appreciate that.

24              Well, help me with my struggle here.

25              MR. LEVENTHAL:  Just -- just -- I'm sorry, just to

16

1    let the Court know --

2              THE COURT:  Go ahead, Mr. Leventhal.

3              MR. LEVENTHAL:  -- I'll reiterate.  I -- whether the

4    bulk of some, I haven't seen any of these binders.  I don't

5    have them.  I -- I left town last Wednesday and I've had my

6    assistants at my office and no -- I don't -- I didn't get a

7    call that there were binders ready.  We did receive CDs and we

8    did receive, like I said, Mae, from the U.S. Attorney's Office,

9    opened up an account for me so that I -- there was a -- it's

10   like a Dropbox so that where -- while I was in Newport, I could

11   then drop it down and see motions and different things that

12   they had, but that was -- and then I had to fly in early

13   yesterday to sort of print all this stuff out.  So, I don't

14   even have that stuff, whether it's bulk or --

15             THE COURT:  Is it all the same?

16             MS. FRAYN:  It is all the same, Your Honor.  So, my

17   assistant sends -- it's her common practice and I think standby

18   counsel and Mr. Leventhal will acknowledge that when discovery

19   becomes available, my legal assistant sends notice to all

20   parties that additional discovery has come -- become available.

21   If they have registered -- this is all sort of technological

22   but, if they have registered to receive items from our office

23   electronically, then we push it that way as well as the

24   physical disk.  It's my -- it's my suspicion, and I will defer

25   to Mr. Maningo and Mr. Wright, that Mr. Maningo, for

2:14-cr-357-APG-VCF - April 25, 2016

17

1    Mr. Wright's benefit, took our disks and printed them out and

2    put them in binders.  We did not produce binders; we produced

3    items on disk.

4              THE COURT:  Okay.

5              MS. FRAYN:  But I -- I would have to rely on

6    Mr. Maningo for that.

7              MR. MANINGO:  Your Honor, I'll acknowledge both of

8    Ms. Frayn's statements.  Yes, we do get notices via e-mail

9    whenever there's additional discovery and yes, I prepared the

10   binders from the materials that were provided to me.  But I

11   would add, Your Honor, whatever new information is provided,

12   even if it's redundant or being re-provided, we're obliged to

13   look at it and Mr. Wright can't necessarily just take on face

14   value that it's exactly identical or it's at his peril.  So, I

15   think Mr. Wright plans to try do as best he can to review all

16   of that material . . . but now we're supposed to pick a jury 30

17   minutes ago.

18             THE COURT:  That's one of my concerns.

19             Have the defendants been prejudiced in their trial

20   preparations by the Government's failure to provided them with

21   witness and exhibit lists and if so, how?

22             MS. FRAYN:  Your Honor, if I may just also note --

23             THE COURT:  Well, that's a question for the

24   defendants.  Have the defendants been prejudiced by the lack of

25   a witness and exhibit list from the Government and if so, how?

1          PRO SE WRIGHT:  Well, I have, Your Honor.  Due to the

2     fact that, well, as we have previously went through discussions

3     on me and the prosecutor coming together on who she's going to

4     subpoena and who I won't have to subpoena, it keep varying.  I

5     mean, she keeps changing it up.  Your Honor, I don't know -- I

6     couldn't get ready and prepare my questions and get ready for a

7     trial because I didn't know exactly who she was calling.

8          As you recall, last time you asked us to talk and see

9     who was going to be subpoenaed and who wasn't.  She gave me

10    like 15 names and then told me she didn't know whether or not

11    they were going to be called as witnesses.  And now that I look

12    at the witness list, these -- they're pretty much different

13    from what she told me last hearing.  So yeah, I have been

14    prejudiced, Your Honor.

15          THE COURT:  Mr. Leventhal.

16          MR. LEVENTHAL:  I -- I don't -- I'm sorry, again, I

17    don't have a witness list.  I was given certain -- I don't have

18    the Trial Brief.  Now, whether that was actually filed --

19          MS. FRAYN:  I handed it to you this morning when I

20    filed it.  I put it on your table.

21          MR. LEVENTHAL:  This (indicating)?

22          I have a Trial Brief.  I'm sorry, Kimberly.

23          I have not seen a witness list nor an exhibit list.

24    This was on the table and I have not looked at this.

25          Again, I can guesstimate, and, you know, the theory,

19

1    obviously the Court knows the theory so I can guesstimate what

2    witnesses -- there's a couple surprise ones, but I haven't seen

3    the witness list yet.

4              THE COURT:  I've got a witness list on -- in the

5    Trial Brief on an unnumbered page, it's the second from the

6    last page, with 30 witness -- 30 names on it.

7              MR. MANINGO:  It's the last two pages, Todd.

8              MR. LEVENTHAL:  This would be the first time I've

9    actually seen this list.  I did understand that there was some

10   experts because last week I've got some CVs from -- I got

11   e-mailed or texted some CVs from fingerprints and such,

12   but . . .

13             Like Number 20, Tonya Fred, I -- that would have

14   somewhat been a surprise to me, Your Honor, that Tonya Fred

15   would be called knowing that -- I know who she is, but I'm not

16   sure --

17             THE COURT:  Wait, I --

18             MR. LEVENTHAL:  Number 20.

19             THE COURT:  Number 20 on mine is HPD Crime Scene

20   Analyst P. Farrell.  Tonya Fred is 21?

21             MR. LEVENTHAL:  No, mine is 20.

22             THE COURT:  So we don't even have the same list.

23             MR. LEVENTHAL:  We don't have the same list.  Number

24   21 is HPD Kent Timothy, Latent Print Examiner is my 21.

25             MR. MANINGO:  And, Your Honor, I see mine has a --

20

 1    probably yours too, Todd -- has two 21s.  Maybe there's a typo

 2    there.

 3              MR. LEVENTHAL:  Oh, yeah.

 4              THE COURT:  Not -- mine doesn't.

 5              MR. MANINGO:  And I would just add that if you go to

 6    Witness 21, Your Honor, we received, I believe, over the

 7    weekend --

 8              THE COURT:  I need a name because the numbers aren't

 9    matching up.  Who is the name?

10              MR. MANINGO:  I'm sorry, Your Honor.

11              THE COURT:  That's all right.

12              MR. MANINGO:  Henderson Police Department Kent

13    Timothy, Latent Print Examiner.

14              THE COURT:  Hang on a second.  Let me find that one

15    on mine.

16              MR. MANINGO:  And we received notice of his expert

17    testimony I want to say either on -- I think Saturday.

18              THE COURT:  I've got him as Number 25.  What's he on

19    your number?

20              MS. FRAYN:  Is the Court working off of -- I'm -- I'm

21    sorry.

22              THE COURT:  That's all right.  Go ahead.

23              MS. FRAYN:  Just trying to figure out.  I filed this

24    morning our Trial Brief as Document 273 and provided a copy to

25    Your Honor and to counsel.

2:14-cr-357-APG-VCF - April 25, 2016

21

1          THE COURT:  I'm looking at what my clerk gave to me

2     as an Amended . . . Trial Memorandum.  Original will be filed

3     in open court on first day of trial.

4          MS. FRAYN:  So the list is different from the one

5     that the Government provided to the Court last week.

6          THE COURT:  All right.  We're going to take a

7     short -- well, I didn't get one last week.  What I got was

8     handed to me this morning.  Apparently was e-mailed to my clerk

9     and somewhere in our claimers it got misplaced and that's my

10    bad, I'll take fault for that but I'm just trying to make sure

11    that we're all on the same page now.

12          In the one that I'm supposed to have, in the one that

13    everybody's supposed to work off of, is Witness No. 20 HPD

14    Crime Scene Analyst P. Farrell or am I working off of the wrong

15    one?

16          MS. FRAYN:  Can I hand you this one, please.

17          THE COURT:  No.  I want you to tell me.

18          MS. FRAYN:  Okay.  So on --

19          THE COURT:  Is Number 20 HPD Crime Scene Analyst P.

20    Farrell?

21          MS. FRAYN:  No, Your Honor, and Document --

22          THE COURT:  So I've got a bad one.

23          MS. FRAYN:  I'm sorry?

24          THE COURT:  Do the defendants have the right one?

25          MS. FRAYN:  Yes, Your Honor.  I handed them both this

1   document this morning, and I handed one to Ms. Clerk to provide

2   to you this morning.

3          THE COURT:  What was handed to me this morning is

4   called the Government's Amended Trial Memorandum and that's

5   what I'm reading off of.  So apparently there's an amended

6   Amended.

7          Okay.  Now I've got one that seems to match yours.

8          Hang on a second -- off the record.

9          (Off-the-record discussion with staff.)

10          THE COURT:  We're going to take a short recess.  I

11  have something I have to address on an emergency basis.

12          (Recess was taken at 9:39 a.m.)

13          (Proceedings resumed at 9:49 a.m.)

14          COURTROOM ADMINISTRATOR:  All rise.

15          MS. FRAYN:  Your Honor, if I may --

16          THE COURT:  You may be seated.

17          Go ahead.  Take your time.

18          (Brief pause in proceedings.)

19          Is everybody ready to go back on the record?

20          MS. FRAYN:  If I can have just one second to process

21  the information that Mr. Maningo just gave me.

22          THE COURT:  Absolutely.  Just tell me when.

23          (Brief pause in proceedings.)

24          Everybody ready?

25          MS. FRAYN:  Yes, sir.

1          MR. MANINGO:  Yes, Your Honor.  Thank you.

2          THE COURT:  All right.  Let's go back on the record.

3          Ms. Frayn, I'm concerned that your statement that you

4    scoured the record and couldn't find anything other than

5    Judge Dawson's order on this stretches credibility to the point

6    of breaking.  I, in two seconds just now -- 30 seconds just

7    now -- I looked on CM/ECF.  My March 30 minutes, Docket No.

8    247, state that we talked about here in court witness list and

9    exhibit lists are due on that date.  Docket No. 232, the Order

10   Regarding Trial states witness and exhibit lists are due to be

11   filed.  On February 22nd the minutes, Docket No. 209, say

12   witness and exhibit lists are due to be filed.  On February

13   16th, Docket No. 200, my previous trial order says witness and

14   exhibit lists must be filed.  So to say you scoured the record

15   and the only thing you could find were Judge Dawson's order

16   . . . says a few things, none of which are good.

17          MS. FRAYN:  Your Honor, I'm not -- I was not trying

18   to be disrespectful.  I was --

19          THE COURT:  I know you're not.

20          MS. FRAYN:  I was looking for the Pretrial Order

21   and -- and I'm sorry because I'm . . . the normal practice used

22   to be as I did.  And so, in my brain, which I confirmed with

23   the clerk mistakenly, filed at Calendar Call meant conveyed to

24   the Court in confidence, not filed in the public record and I

25   apologize.

1          THE COURT:  Okay.  I get that.  No apology needed for

2   that issue.  But here's my question.  Are you -- because

3   maybe -- I'm new to the bench.  It's only been three years.

4   You've been doing this longer than I have.  Explain to me then,

5   has it been the U.S. Attorney's Office policy that they don't

6   give the defendants a list of witnesses or exhibits until the

7   morning of trial?  Because that's what you're suggesting by

8   saying we filed -- by giving to me a confidential memo with all

9   that, the defendants would not know until the morning of trial

10  who the witnesses would be.  Is that what the policy has been?

11          MS. FRAYN:  If the Court, I believe, Your Honor,

12  would look at what I conveyed to Ms. Clerk, it has a cover

13  sheet that says this is being confidentially submitted and will

14  be filed in open court.  That had been, with Judge Hunt and

15  Judge Pro, and previous judges, the standard practice.  Yes,

16  Your Honor.

17          THE COURT:  Okay.  I get that.  But -- and so you

18  don't give the defendants a list of witnesses or a list of

19  exhibits?

20          MS. FRAYN:  Not until the day of trial, sir, no.

21  That was the standard practice.

22          THE COURT:  Okay.  Well . . . that's one issue.  The

23  second issue is, my order says different and I will tell you

24  this.  I got that order from either Judge Pro or Judge Navarro,

25  because I didn't invent it myself.  I got it from one of them

2:14-cr-357-APG-VCF - April 25, 2016

25

1    and doctored it up.  So . . . I think it had to be their

2    practice, too.  Now, whether Hunt and Mahan and others had a

3    different practice, okay, but it -- it --

4           MS. FRAYN:  Absolutely, Your Honor.  I am so sorry.

5    I -- I -- I tried to con -- I'm not trying to blame Melissa at

6    all.

7           THE COURT:  I know you're not.  I know you're not.

8           MS. FRAYN:  I tried to make sure that I was following

9    the Court's order and I apologize as completely my fault.  I

10   have provided to the defense, and I have a copy for the Court,

11   the exhibit list this morning.

12          I can tell the Court that Mr. Wright was kind enough

13   to provide the Government with a list of witnesses that he had

14   subpoenaed and they are, many of them, on the Government's

15   witness list.  So he is not prejudiced in that he has actual

16   knowledge that these people had relevant information, which the

17   Government believes is helpful to them but apparently

18   Mr. Wright believes is helpful to him as well.

19          THE COURT:  But -- but -- but calling those in his

20   case-in-chief, if he even has to get there, is different than

21   knowing the Government's going to call them and preparing a

22   cross-examination.  You would agree, wouldn't you?

23          MS. FRAYN:  Yes, but the majority of them were

24   disclosed -- the majority of the ones that are at issue were

25   disclosed to the defendant when --

26

1          THE COURT:  You could disclose a hundred witnesses in

2     discovery but to know that you're only going to call a set

3     number is different because I -- if I don't know which 30

4     you're going to call, I have to prepare for a hundred.  That's

5     why I put in there that -- and Judge Navarro and Judge Pro, I

6     believe, put in there that you've got to know ahead of time so

7     that we can adequately and efficiently prepare for a trial.

8     That's what I struggle with.

9          MS. FRAYN:  Yes, sir.

10          THE COURT:  So -- so --

11          MS. FRAYN:  The -- I'm sorry.

12          THE COURT:  Go ahead.  Go ahead.  That's fine.

13          MS. FRAYN:  The other thing that I would like to

14     advise the defense and the Court of is Mr. Leventhal mentioned

15     that Ms. Fred was on the witness list which was surprising to

16     him.  It was surprising to us also.  The FBI had not been able

17     to locate and serve Ms. Fred until Saturday afternoon, when she

18     was finally located and served, so . . . we did not believe

19     that she was going to be available to testify until she was

20     finally located.

21          Ms. Cole's victim statement has not been filed with

22     the Court.  It was provided to us by Lisa Rasmussen, who is

23     representing Mr. Cole because we believed that in order to

24     cross-examine Ms. Cole, the defendants would have a right to

25     have reviewed her written statements about the events for which

1    she was going to testify.

2              THE COURT:  Okay.

3              MS. FRAYN:  But, I did not place it in the court

4    record.  I don't know what Ms. Rasmussen did, but it's common

5    practice that those Victim Impact Statements don't get filed

6    with the court until the PSR has issued and --

7              THE COURT:  I agree with that and I don't take issue

8    with that.  I just was unsure what Mr. Leventhal was referring

9    to, if there was some other document.  Because I don't have an

10   exhibit list, I have no idea what that -- what that document is

11   or would do.

12             MS. FRAYN:  And then, Your Honor, if I just may --

13   I'm in no way making excuses for myself but I'm just trying to

14   convey information so that the Court can analyze --

15             THE COURT:  Please.

16             MS. FRAYN:  -- the prejudice.

17             THE COURT:  And Ms. Frayn, let me pause.  I

18   appreciate your taking responsibility for this because I have

19   had far too many lawyers come in and try to dodge it and I

20   appreciate your taking responsibility and pointing out where --

21   properly, where we made a mistake.  It was lost in chambers

22   between staff, that document, and I appreciate that and I

23   appreciate your taking responsibility and explaining to me how

24   other courts may have done it differently.  So I know you're

25   not making excuses, you're offering explanations and that's

1    what I need to hear.  So go ahead.

2              MS. FRAYN:  So, Your Honor, the . . . the

3    witnesses -- for example, the forensic witnesses for -- does

4    the Court now have Document 273?

5              THE COURT:  I do.  Thank you.

6              MS. FRAYN:  I would refer by number if that would be

7    all right.

8              THE COURT:  That would be great.  That would be a lot

9    easier.  I have 273, yes.

10             MS. FRAYN:  Okay.  So, the first -- the first witness

11   that is not on the defendant's subpoena list is a crime scene

12   analyst.  That person recovered some of the forensic evidence

13   and those reports were previously turned over in discovery.

14             THE COURT:  What number is that?

15             MS. FRAYN:  Number 3.

16             THE COURT:  Okay.

17             MS. FRAYN:  Including the pictures that document what

18   she processed and the report that memorializes that.

19             The next one is similarly the crime scene analyst who

20   processed the searches of Mr. -- of the Yellow Daisy residence

21   and Sunridge Heights and the Mustang and the -- Ms. Perreira's

22   vehicle, all of which was searched in connection with that.

23   All of those photographs, all of his reports, have been

24   previously turned over.

25             Number 11, Detective Hoska, his supplemental reports

1    have been previously turned over.  And by previously,

2    Your Honor, I don't mean . . . in the April filings or the

3    March filings.  I mean these were in the bulk of the discovery

4    that the defendants have had for a long period of time.

5           Number 12 is a crime scene technician.  Similarly,

6    her report documents what forensic or other evidence she

7    impounded into the evidence chain in this case and those

8    reports were turned over.

9           Mr. Darwiche of Sin City Auto, his recorded

10   statements and the transcripts for those have been previously

11   turned over in the bulk of the discovery, months and months

12   ago.

13          The ones I'm skipping, Your Honor, are the ones that

14   have been identified as under subpoena for the defense as well.

15          Detective Luszczyk, his -- this is one of the

16   witnesses that testified -- this is 18 -- testified in

17   Ms. Perreira's Suppression Hearing.  Those were the transcripts

18   I was advising the Court and defendants that they were

19   available in the public record.  In fact, I think both parties

20   attached them in their open pleadings when we were litigating

21   the Suppression Hearing, but that for the defendants' ease we

22   were going to reproduce them with sequential bates numbers this

23   morning.  So, that has all been available and his testimony has

24   been in the record since we litigated that which, Mr. Leventhal

25   might remind me, but it's been a . . . number of -- six, six or

1    so months, sir.  So all of that was available to clearly

2    Ms. Perreira who sat through the testimony and obtained the

3    transcripts and then Mr. Wright when the transcript --

4              THE COURT:  I'm not so much worried about the

5    documents.  I want to know the witnesses that have not been

6    identified by defendant's witness list.

7              MS. FRAYN:  Detective Fuentes is also a detective

8    that has reports that have been turned over in the

9    investigation.

10             THE COURT:  Which one is that?

11             MS. FRAYN:  19.

12             He conducted the two forensic exams on the cell

13   phones.

14             THE COURT:  Okay.

15             MS. FRAYN:  And both his report and the cell forensic

16   exams have been previously turned over in discovery.

17             Ms. Fred, we've spoken of.  We just found her

18   Friday -- Saturday afternoon.

19             Mr. Kent is a HPD latent print examiner.

20             THE COURT:  You just did an expert designation of him

21   on Sunday, I think, yesterday.

22             MS. FRAYN:  Because, Your Honor, I was under the

23   mistaken belief that all of the latent prints had been analyzed

24   by the FBI.  When I noticed them and it was when I was looking

25   at the report for that particular processing, I realized that

31

1    it was processed by HPD, not the FBI.

2            THE COURT:  So that notice that you filed yesterday

3    is different than the one you filed months ago, Number 132.

4            MS. FRAYN:  It relates to different process.  So,

5    Mr. Kent Timothy processed the latent prints that were matched

6    to Mr. Cole off of the vehicle.

7            THE COURT:  Okay.  And that --

8            MS. FRAYN:  The FBI processed the firearm --

9    processed other -- different evidence, Your Honor.

10           THE COURT:  Okay.  So the ones -- the one that was

11   filed at 132 is different than the one you filed yesterday?

12           MS. FRAYN:  Yes, sir.

13           THE COURT:  Okay.  Thank you.

14           MS. FRAYN:  But the ATF notice, the FBI fingerprint

15   notice, and the FBI DNA notice were filed I believe in October.

16   Those dates are in the Government's Trial Memo.

17           And similar, the crime scene technician, Elisha, just

18   processed some of the evidence that was obtained in the search

19   and those reports have been previously turned over in the bulk

20   of the discovery.

21           FBI Josh Mahan was added to our list because he's at

22   counsel table and because he's the one that located Ms. Fred

23   and we did not know whether or not that he would be required to

24   testify in connection with that.  So we could not have known

25   that he was going to need to be added until this weekend.

32

 1          THE COURT:  So nine or 10 of these -- nine of these

 2   30 were not on the defendant's list?

 3          MS. FRAYN:  Correct, but the bulk of them are

 4   handling and processing evidence for which there are written

 5   reports that were previously provided.

 6          THE COURT:  Here's my concerns.  Just to sort of

 7   summarize them.

 8          There's obviously been a violation of my orders

 9   because no witness and exhibit lists were produced.

10   Technically the last one, the last order said they were due

11   last Tuesday at Calendar Call.  You asked for an extension, I

12   gave you till Wednesday but, in theory, they should have been

13   done three weeks to a month ago when we were getting ready for

14   trial then and you came in at Calendar Call and said we need a

15   three-week extension because we're moving our office and we

16   didn't really expect we were going to be moving, although it

17   seems to me everybody knew it was moving that day, but I

18   granted that against Mr. Wright's wishes.  But had I not

19   granted that, all this would have been due then.  But I gave

20   you the extension and we had Calendar Call last Tuesday and all

21   this stuff was due then.  I gave you an extension till the next

22   day and we still don't have this.  And now we come in this

23   morning and the defendants just now get the witness and exhibit

24   list.  They don't even have the exhibit list, I guess.  We're

25   still --

1              MR. MANINGO:  We -- I'm sorry, Your Honor.  We just

2    received it just now.

3              THE COURT:  Okay.  So you've got that finalized now,

4    at 10 o'clock.

5              Mr. Wright has repeatedly requested a speedy trial

6    and has been quite antagonistic to the Government.  So it

7    cannot be a surprise to you that we were going to go to trial.

8    And yet . . . the defendants, just this morning, get a list of

9    witnesses and exhibits -- and exhibits.  I don't see how it's

10   fair that we start a trial this morning based upon that.

11             As I mentioned, Mr. Wright's been in detention for

12   two years and he was able to get a witness and exhibit list to

13   me, or at least a witness list.  I guess he didn't have

14   exhibits identified.  And then I get two Motions in Limine at

15   10:45 on Saturday.  Why those weren't filed 30 days before

16   trial, as required by the order, why they weren't filed last

17   week, I don't know the answer to that.  It appears to me from

18   reading them that the Government didn't start preparing this

19   trial until late last week and apparently didn't start even

20   meeting with Mr. Cole or doing final preps until last week,

21   late last week.  Otherwise, I would have expected to see this

22   Motion in Limine sooner.

23             The Motion in Limine regarding text messages

24   profoundly perturbs me because you've had those phones since

25   you seized them at the arrest.  We'll get into 404(a) and (b)

1    and whether notice was required ahead of time or not later but,

2    all of this profoundly troubles me.  And . . . without casting

3    a wide net, this is not the first time I've been troubled by

4    the Government's late preparation for a trial.  I get the idea

5    that you don't know if it's going to go to trial so you've got

6    limited resources and you've got to wait to prepare until the

7    last minute.  I get that in a lot of cases.  I understand that.

8    I've prepared for trial and I know the last thing you want to

9    do is prepare for a trial that's going to settle or going to

10   plead out.  I have a hard time seeing that in this case, given

11   Mr. Wright's busyness in this trial, filing motions, demanding

12   speedy trial, being antagonistic.  It's been clear this case is

13   going to trial.  All of that troubles me.  But probably the

14   most trouble I'm dealing with is that these defendants -- how

15   is it fair that these defendants are forced to prepare for

16   trial not knowing the witnesses or exhibits that are going to

17   be used by the Government until the morning of trial?  I

18   can't -- I don't see that as fair or just.

19          I've told you I've got some options.  I don't want to

20   dismiss this case.  I've got other options, one of which is to

21   say, you know, I'm going to give them time to prepare.  But

22   he's got speedy trial rights, as does Ms. Perreira.  And so I

23   struggle with this.  And I've told you repeatedly I have a very

24   narrow calendar available to have this trial because I've got a

25   lot of other trials backed up that I have to get to next, and

1    they have speedy trial rights as well.

2             Help me.  What's the remedy?

3             Do you have any suggestions -- I've got suggestions

4    from the defendants that I dismiss.  Are there -- are there

5    remedies for the unfairness I see?  Because what I'm dealing

6    with right now, that I'm giving strong consideration to is to

7    say this:  Had you followed the order, they would have had all

8    this stuff on Wednesday, 8 o'clock, 9 o'clock at night when you

9    e-mailed that over to my office.  So they would have had

10   Thursday, Friday, Saturday, Sunday to prepare.  And I presume

11   they would be preparing over the weekend like you were.  So, my

12   inclination is to say I'm not going to dismiss, we're going to

13   pick a jury today.  My inclination is to say we're going to

14   start on Friday.  I'm going to give them four days to prepare

15   based on all this that you've given them.  That gives you more

16   time to prepare which may not be fair to the defendants, but

17   I'm also inclined to say we're going to start on Friday and you

18   get Friday, because I told you you were going to finish this

19   week, and then they've got Monday and Tuesday of next week and

20   we're done.  And . . . it's not their fault that we're at this

21   situation.  And so my inclination is to say, rather than

22   preclude you from calling witnesses and exhibits, we're going

23   to pick a jury today and you'll have all day Friday to put your

24   case on and then the defendants put their case on if they have

25   one and we go to the jury.

1          I'm open to comments or other remedies or other

2    suggestions.  If you want to take some time to think about

3    that, have at it.

4          Mr. Schiess looks like he's chomping at the bit to

5    chat with you.  So, why don't we take a five minute break and

6    think about that or some other remedies but, that's where my

7    head's at right now.

8               So let's take a five minute break.

9               (Recess was taken at 10:12 a.m.)

10              (Proceedings resumed at 10:25 a.m.)

11              COURTROOM ADMINISTRATOR:  All rise.

12              THE COURT:  Thank you.  Please be seated.

13         Ms. Frayn.  And let me, before you begin, note for

14   the record that I need to correct myself.  I did get my trial

15   order form from Judge Hunt, not from Navarro or Pro.  But, that

16   convinces me that Judge Hunt did the same thing I did, which is

17   require the Government to disclose witnesses and exhibits in

18   advance of trial.  And I did some checking and apparently Judge

19   Mahan requires the same thing.  So I'm not sure which judge the

20   Government is referring to as having this policy that they

21   didn't have to disclose witnesses and exhibits before the

22   morning of trial but, that being said, people are standing up.

23         MR. MANINGO:  Your Honor, before we get started

24   again, Mr. Wright has asked that I make a record with respect

25   to what was discussed prior to your recess, if I may, unless

1   Your Honor is prepared to inquire of the Government before

2   that.

3           THE COURT:  Go ahead.

4           MR. MANINGO:  Okay.  Thank you, Your Honor.

5           Just with respect to the witnesses that were

6   identified in the Trial Brief provided by the Government this

7   morning, I believe Ms. Frayn represented that there might have

8   been seven, eight, or nine witnesses that Mr. Wright had no

9   knowledge of.  Mr. Wright advises me, and in looking at the

10  subpoena list, that number totals closer to 15 to 16, maybe

11  even 17 witnesses.

12          And just to make a record, the witness -- referring

13  to the witness list that's at the end of the Government's Trial

14  Brief, witnesses Number 3, 6, 11, 12, 13, 14, 16, 18, 20, 21,

15  22, 23, 24, 25, 26, 27, and 30 were witnesses that Mr. Wright

16  didn't anticipate having to prepare for testimony.

17          THE COURT:  Okay.

18          MR. MANINGO:  Generally, Your Honor, those who play

19  by the rules are disadvantaged by those who don't.  I don't

20  throw stones at the Government's table and suggest to the Court

21  that any of this was intentional, but I'd ask the Court to look

22  at it through the prism -- and I think you have, Your Honor --

23  of the detriment to my client, or to Mr. Wright.  And

24  understand, I'm standby counsel but he's asked me to make these

25  representations because he didn't have the benefit of receiving

1    all the documents that came in over the weekend.

2              And Mr. Leventhal and I have spoken at the break and

3    he and I have been doing this collectively for 35, 40 years.

4    We can anticipate the Government's going to call these

5    witnesses, we generally have an idea of what the Government's

6    going to do, but this is Mr. Wright's first go at this as

7    standby counsel representing himself.  It changes the

8    landscape.  Not that he's entitled to different rules but,

9    he's, at a minimum, entitled to the rules.

10             And I appreciate Your Honor's representations or the

11   Court's statements because it seems like we're going down the

12   path of protecting Mr. Wright's rights, but I would suggest to

13   the Court and Mr. Wright wants me to do everything but pound

14   the table or stand on the table and instruct the Court or

15   advise the Court that he believes, and I agree with him, that

16   the only true remedy that can be offered by the Court in this

17   situation is dismissal of the case.

18             Thank you, Your Honor.

19             THE COURT:  Okay.  Mr. Wright, you agree with what

20   Mr. Maningo has just said?

21             PRO SE WRIGHT:  Yes.  Yes, I do, Your Honor, and I

22   got a few statements if -- if you'll have it.  May I say it?

23             THE COURT:  Okay.

24             PRO SE WRIGHT:  All right.

25             Your Honor, I've been sitting in custody for about

39

1   two years now, you know, and I haven't requested a continuance

2   one time, although I do know some of the continuances were my

3   fault so I will take responsibility for that but, as the

4   Government knows from day one it's been no deals, I have asked

5   for no deals.  I know that's not, you know, your business, but

6   I haven't asked for no deals so, the Government new exactly

7   that I wanted to go to trial.  I'm, you know, exhausting my

8   right to go to trial.

9         Well, as you know, because you've been here, that the

10  last few times I've been in the courtroom the Government has

11  continued the case against my witnesses -- wishes and . . . she

12  had ample amount of time to file or follow your Trial beef --

13  Brief and she did not follow it, Your Honor, and it's not my

14  fault and . . . I can't push any harder for dismissal.  I'm

15  requesting the Court dismiss this case based on the fact that

16  I've been highly prejudiced and, I mean, it ain't -- and it

17  ain't my fault.  I mean, there's nothing else to say.

18        THE COURT:  Understood.

19        Mr. Leventhal, anything to add?

20        MR. LEVENTHAL:  I would just -- with what Mr. Maningo

21  had indicated, that, you know, to us, it's not -- I mean, I can

22  understand what Mr. Wright's going through because of all the

23  material that came over this weekend.  It's going to be very

24  difficult for him to prepare and to continue on preparing.  I

25  mean, for me, I'm out and I've got resources and, you know, but

40

1  for him, I -- I can see how this is highly prejudicial to

2  him --

3            THE COURT:  Understood.

4            MR. LEVENTHAL:  -- given -- given what's happened.

5            THE COURT:  Okay.

6            Ms. Frayn.

7            MS. FRAYN:  Your Honor, first the Government does ask

8  the Court not to dismiss this matter.  It's . . . the charges

9  are very serious.

10           THE COURT:  Pull the microphone up a little bit if

11 you would, please.

12           MS. FRAYN:  So sorry.

13           THE COURT:  Thank you.  That's okay.

14           MS. FRAYN:  The charges are very severe and the

15 community has a right to a trial as well.  So we would ask that

16 the Court not dismiss this matter and if the Court is inclined

17 to dismiss the matter, that the Court dismiss it without

18 prejudice, not with prejudice.

19           That having been said, the Government has a

20 suggestion to the Court.  The Government would suggest that the

21 Court allow the Government to review its Indictment and to

22 choose to dismiss certain counts in order to streamline the

23 trial and that we would ask that the Court allow us two days to

24 put our case in, after we have streamlined it; that the

25 Government wants to be clear that late last week when I

2:14-cr-357-APG-VCF - April 25, 2016

41

1    interviewed -- when I was interviewing the CSI witnesses and

2    identified Mr. Kent, then I didn't file the notice until this

3    weekend and so the Government will voluntarily not call that

4    witness or place that evidence before the jury because I was

5    not timely in filing that notice.

6                    (Brief pause in proceedings.)

7                    But we would ask for two days and we would note that

8    the Court had -- had indicated that it was entirely possible

9    the Government's case might go over into Monday morning and so

10   . . . we would remove the prejudice from Mr. Wright by advising

11   him by close of business today which counts we'll be dismissing

12   so that he can focus his trial preparation on the remaining

13   counts and the -- we will revise the witness list by close of

14   business today -- well, I should say, Your Honor, I don't know

15   how long -- if the Court -- I can't be in two places at once,

16   sir.  If the Court picks a jury clear up until 5:00, we will

17   need a little bit of time to do these things but my

18   representation is we will promptly notify opposing parties what

19   the Government will be intending to proceed forward on, what

20   will be dismissed, how the witness list will change because of

21   those choices, and then we would ask that the Court give the

22   Government two days to put its case-in-chief in, please.

23                   THE COURT:  It would seem that if I don't dismiss but

24   set it for a one- or two-day trial, what you're suggesting

25   would have to be done anyhow.  You'd have to go through and

1    cull your witness list and cull your exhibit list because you

2    can't call 30 witnesses in a one- or two-day trial so . . .

3    that, I would expect and I would expect you to give notice to

4    the other parties.

5            The issue of Mr. Kent, I am very concerned that it's

6    untimely, on the Sunday before trial.

7            (Brief pause in proceedings.)

8            Anything further from anybody?

9            MS. FRAYN:  No, Your Honor.

10           MR. LEVENTHAL:  Just -- just one other thing.

11           As I went through -- I just sat down with Ms. Frayn.

12   As I went through some of the exhibits, I've noticed that most

13   of the exhibits that I put question marks next to are very high

14   number exhibits which led me to believe that they were just

15   recently given over, either late last week, I'm not sure when

16   but, Report, Cole proffer, that's 7811 through 7813.  I haven't

17   seen that.  Detective Aguiar's handwritten notes regarding

18   Cole's MDA proffers, I've never seen that and that's at 8024 to

19   8041.  There's transcripts of Tonya Fred's interview.  While

20   I've heard the interview, there -- the transcripts are at 7000

21   so, I believe a lot of this stuff that I -- that I -- I

22   question that I've ever seen are very high and probably came in

23   just late so . . .

24           In addition, they do have, as an exhibit, they have

25   Tonya Fred's listed as an exhibit but apparently they just

1    found her last Saturday.  They have her down as 37L and 37N,

2    transcript Tonya Fred interview, as well as audio disk Fred

3    interview.  So they just found her Saturday but they've listed

4    her -- her interviews down, which makes -- I mean, that -- that

5    was pretty quick.  Again, I just got this this morning.

6             In terms of the witness, Ms. Cole, that being Cole's

7    mother, I just received that letter this week and it's, again,

8    labeled as a Victim Impact Statement and there's no bates

9    stamps to it but I did just receive that this week.

10            So I would . . . and then we haven't even spoken

11   about the Motions in Limine that came in this weekend --

12            THE COURT:  No, I --

13            MR. LEVENTHAL:  -- on whether or not these text

14   messages are 404(b).  Well, the 404(b) doesn't really

15   completely apply to Ms. Perreira.  I still --

16            THE COURT:  A portion of it does.

17            MR. LEVENTHAL:  One -- one portion does and I would

18   be -- I've -- I prepared my notes to orally discuss that but,

19   the text messages, I have till May 10th, I believe, pursuant to

20   the order, to respond to this.  So, I have till May 10th.

21            THE COURT:  I understand the position you're placed

22   in.

23            All right.  Had the Government provided the witness

24   and exhibit list on Wednesday as required, the defendants would

25   have had four days to prepare; Thursday, Friday, Saturday, and

44

1    Sunday.  So I'm going to give them . . . unfortunately less

2    time than that because we're going to eat up a good chunk of

3    today picking a jury and dealing with this -- these issues this

4    morning.

5         We're going to start trial on Friday and the

6    Government has Friday to put its case on.  Because that's the

7    only fair remedy I see at this point.  And since we've got a

8    jury pool here, we're going to pick the jury today.

9         We'll figure out how much time the defendants need to

10   prepare to respond to the Motions in Limine that were filed at

11   10:45 Saturday night.  And I know I'm saying that a lot, but I

12   want to drive it home, how irritating I find Motions in Limine

13   filed at 10:45 on a Saturday night before trial.  Mostly

14   because my order said 30 days before trial and if the

15   Government didn't prepare for trial soon enough, that's its

16   problem.

17        I have a lot of substantive problems with the two

18   Motions in Limine.  There may be some issues in there to grant.

19   There's a lot in there that's problematic that the defendants

20   are entitled to look at those and decide how to respond.  So we

21   need to reserve some time between now and Friday to deal with

22   that, to deal with the Government's revised witness and exhibit

23   list so that they . . . so that the defendants know now which

24   witnesses to prepare for, since that's going to change again.

25   But even with this remedy that I'm going to impose, it still

45

1  shortchanges the defendants a bit of time to prepare that they

2  would have had had the Government done it's job.  So, it's not

3  necessarily a free ride for the defendants, unfortunately.  But

4  the Government created this problem and I'm not going to allow

5  the Government's creation of this problem to interfere with the

6  defendants' preparation for their trial to the extent I can

7  avoid that, within reason.

8          So we're going to pick a jury today since the panel's

9  here.  We'll pick a jury.  And I'll tell the jury they'll come

10  back on Friday and we'll go Friday and Monday and Tuesday and

11  the jury -- Government better be done on Friday and if the

12  defendants have witnesses and they want to put on a case,

13  they've got Monday and Tuesday to figure out how to do that and

14  the jury will get this case by the end of Tuesday at the --

15  unless I change my mind for some reason that I don't think of

16  right now.  But that's the schedule we're going to operate

17  under.

18          If the Government decides it wants to streamline its

19  case by changing its Indictment, it can do that.  Doesn't need

20  my permission to do that, that I'm aware of.  I suppose if it

21  wants to dismiss some claims, it probably needs my permission

22  to do that at this date, I can't remember from the local rules,

23  but you can certainly reinvestigate and redecide what it is you

24  want to go forward on, given the limited amount of time that

25  you've allowed yourself.

46

1      Everybody understand?

2      Anybody have any questions?

3      MR. LEVENTHAL:  Friday we are going to open as well?

4      THE COURT:  Yes.

5      MR. LEVENTHAL:  As well the Government will put on

6  its case and then we -- the Government will close Friday

7  afternoon?  We're not doing any openings today; correct?  Based

8  upon the fact that --

9      THE COURT:  We're not -- I can't see how we can do

10  openings today since . . . this is all changing and I don't

11  know how you prepare to do an opening.

12      MR. LEVENTHAL:  I -- okay.  So, along that line now I

13  know.  Friday morning, when we come in, we're going to do

14  openings and then give it to the jury on Friday -- then the

15  Government's to rest and if we want to go -- continue Monday or

16  Tuesday, then we have that option and then -- okay.  Fair

17  enough.

18      THE COURT:  Or -- or Friday afternoon, if we've got

19  time and we can put witnesses on.  It depends when the

20  Government rests.

21      MR. LEVENTHAL:  Very good.  Thank you.

22      THE COURT:  Mr. Maningo, Mr. Wright, any questions

23  about that schedule?

24      MR. MANINGO:  No, Your Honor.  Thank you.

25      PRO SE WRIGHT:  No, Your Honor.

2:14-cr-357-APG-VCF - April 25, 2016

47

1          THE COURT:  Ms. Frayn?

2          MS. FRAYN:  No questions from the Government,

3   Your Honor.

4          THE COURT:  All right.  We're going to need to figure

5   out a time to set a hearing on the Motions in Limine so, some

6   time today you folks on the defense side need to think about

7   how much time you need to prepare to respond to those two

8   Motions in Limine.  I don't need a written response

9   necessarily.  We can orally deal with those tomorrow or the

10  next day or the end of the day today, depending upon if you've

11  had sufficient time to consider that.  We don't need to make a

12  decision on that timing right now.  But, it does lead to my

13  next question, and that is, what do I tell the jury during voir

14  dire about the statement of the case?  Which, pursuant to my

15  order, was due last week and I don't have one.  So I crafted my

16  own.  And I'm going to read it to you and you can tell me if

17  you have a problem with it.  Because when I don't get help

18  drafting this, I make it up myself.

19          My thought is to tell the jury the following during

20  voir dire:

21          I will now give you a brief introduction to the trial

22  of this case.  This is a criminal case commenced by the United

23  States, which I may sometimes refer to as the prosecution or

24  the Government, against Brian Wright and Daniel Perreira, who I

25  may sometimes refer to as the defendants.

48

1        Mr. Wright and Ms. Perreira are charged with four

2   counts; one count of Conspiracy to Interfere with Commerce by

3   Robbery, one count of Interference with Commerce by Robbery,

4   and two counts of Brandishing a Firearm in Furtherance of a

5   Crime of Violence.

6        The Government alleges that between April 28th, 2014,

7   and May 20th, 2014, Mr. Wright and Ms. Perreira conspired with

8   each other, and with others, to rob three jewelry stores; the

9   MJ Christensen Diamonds store in Las Vegas at Charleston and

10  Rampart, the Jared's Galleria of Jewelry store in Las Vegas

11  near Rainbow and Lake Mead, and the MJ Christensen Diamonds

12  store in Henderson at South Eastern and Coronado Center.  The

13  Government also alleges that a firearm was brandished in

14  connection with that conspiracy.

15       The Government also contends that on May 8th, 2014,

16  two employees of the Jared's Galleria of Jewelry store were

17  robbed and that a gun was brandished in connection with that

18  robbery.

19       Finally, Mr. Wright is charged with a fifth crime,

20  being a Felon in Possession of a Firearm.  The Government

21  alleges that Mr. Wright possessed a firearm on June 6th, 2014,

22  and that Mr. Wright had previously been convicted of a felony

23  crime.

24       That's what I'm proposing to read to the jury about

25  what this case is about.

2:14-cr-357-APG-VCF - April 25, 2016

49

1          Anybody have any problem with that?

2          It's supposed to be just a short narrative about --

3   so they have a context for what they're about to hear.

4          Everybody okay with that?

5          MR. MANINGO:  I'll jump up, Your Honor.

6          THE COURT:  Yes.

7          MR. MANINGO:  The only issue would be that the

8   amendments to the Indictment that the Government has proposed.

9   It could cause confusion to the jury if they hear from

10  Your Honor that there are so many charges but, in reality,

11  there aren't.

12         THE COURT:  And if the Government drops those, I

13  guess I would have to say to the defendant -- to the jury the

14  Government has agreed to drop certain charges.  I mean, I don't

15  know.  I don't know how to cure that.

16         MR. MANINGO:  I don't either, Your Honor.

17         THE COURT:  Yeah.  If anybody's got a suggestion.  I

18  mean, I got to tell the jury something what this case is about.

19  I could tell them less, but I need to at least explain to them

20  what they're about to hear, unless you want me to not tell the

21  jury anything about what this case is about.

22         PRO SE WRIGHT:  Well, I got -- I got one issue,

23  Your Honor.  I would like for you to at least read out what

24  the -- what the brandishing -- what the brandishing count says

25  about me and Perreira conspiring, if you may.

50

1          THE COURT:  Well . . . that would be addressed by the

2   parties in their opening statement.  This is just designed to

3   say, "Hey, jury, this is a heads-up in general what the case is

4   about."  So, that may be appropriate opening or in closing, but

5   I don't think it's in the jury voir dire.  But I understand.

6          Government have any questions or concerns or

7   problems?

8          MS. FRAYN:  No, Your Honor.  We would just note

9   though it's not unusual for the Government to dismiss charges,

10  even after trial's commenced.

11         THE COURT:  Okay.

12         And -- and -- is there anything about my description

13  that I gave?  The only concern -- question I had was the

14  Government contends that on May 8th, 2014, two employees of

15  Jared's were robbed.  That's the third count, I think it is,

16  under the Indictment.

17         MS. FRAYN:  There's no objection from the Government,

18  sir.

19         THE COURT:  Okay.  That's what I will read to the

20  jury is what the trial's about.

21         With regard to giving them the names of witnesses for

22  them to see if they have any conflicts, I have Mr. Wright's

23  list of witnesses I will read to them.  Should I read the

24  Government's list of 30 witnesses and that way you cannot call

25  all of them and I'll tell them these are all listed but they

51

1    may not all be called?  Is that the safest thing to do?

2              MS. FRAYN:  Yes, please, sir.

3              THE COURT:  Okay.  I'll do that.

4              I would caution the parties then -- well, we're not

5    going to make opening statements until Monday, that's true.  So

6    we'll pick a jury today, obviously not before lunchtime but

7    we're going to start, I guess, the process.

8              Well, that's a good question.  Do we want to start

9    picking the jury now and get an hour into it, hour and a half,

10   or would the parties rather wait until 1 o'clock?  That's my

11   concern.  I don't want to keep the jury waiting unnecessarily

12   but obviously we're not going to get through voir dire.  My

13   thought is to start now because we're going to run out of time

14   if I wait too long and I don't know if we're going to get

15   finished by the end of the day.

16             MR. LEVENTHAL:  My -- I have one thing in front of

17   Judge Leen at 1:45 that occurred late last week that I have to

18   be so if we started at 1:00, I would have to leave at 1:45.

19   It's not a long -- it's just a Detention Hearing.  So if we

20   started now, that would be putting me in a better position to

21   at least get going.

22             THE COURT:  So if we take a later lunch break and

23   then --

24             MR. LEVENTHAL:  That's correct.

25             THE COURT:  Okay.

52

1          MR. LEVENTHAL:  If that's okay with you.

2          THE COURT:  All right.  So, my inclination --

3  Mr. Wright?

4          PRO SE WRIGHT:  Well, could I take a bathroom break

5  real quick, Your Honor?

6          THE COURT:  Yeah.  Yeah.  I was going to say let's

7  take a five minute break, everybody get situated, we'll bring

8  the jury up and then launch into voir dire.

9          Does that make sense?

10         Anybody have a problem with that?

11         All right.  So, Ms. Wood, would you please send

12  Summer an e-mail that we'll take a five minute break and if

13  she'll have them up here in about eight minutes, that would be

14  great.  Eight or 10.  And then we'll start the process.

15         All right.  We're in recess.

16         (Recess was taken at 10:49 a.m.)

17      *** END OF EXCERPT OF TRANSCRIPT OF PROCEEDINGS ***

18                         --oOo--

19              COURT REPORTER'S CERTIFICATE

20

21         I, Heather K. Newman, Official Court Reporter, United
    States District Court, District of Nevada, Las Vegas, Nevada,
22  do hereby certify that pursuant to Section 753, Title 28,
    United States Code, the foregoing is a true, complete, and
23  correct transcript of the proceedings had in connection with
    the above-entitled matter.

24
    DATED:  5-4-2016          ___/s/ Heather K. Newman___
25                            Heather K. Newman, CCR #774
                              OFFICIAL FEDERAL REPORTER